## STATE v. ELIAS HART.

### (Filed 11 April, 1962.)

**1. Criminal Law §§ 51, 55—**

It is not required that a hematologist be also a chemist in order to be qualified to give expert testimony as to the effect of given percentages of alcohol in the blood stream of human beings, the witness having testified that he had studied standard works upon the subject, that he had worked under pathologists and senior technicians, and that he had made analyses of samples of blood over a number of years to determine the percentage of alcohol and other elements in the blood stream.

**2. Criminal Law §§ 52, 55—**

It is competent for a witness qualified as an expert by the court and who has testified as to the percentage of alcohol in a sample of blood which the witness had taken from defendant immediately after the time in question, to testify as to the effect of various percentages of alcohol in the blood stream of human beings, that some humans were appreciably under the influence of alcohol at a certain percentage, while others would not be under the influence until a higher percentage was reached, and that all persons, regardless of size, age, or anything else, would be appreciably under the influence of alcohol at a percentage less than that found in defendant's blood, etc.

**3. Criminal Law § 107—  Instruction on testimony of expert witness as to effect of various percentages of alcohol in blood stream, held not erroneous.**

The charge of the court in recounting the testimony of an expert witness as to the effect of various percentages of alcohol in the blood stream of human beings, given in explanation of the witness' opinion that all persons regardless of age, size, or anything else, would be appreciably under the influence of alcohol if they had a percentage of alcohol in the blood stream even lower than that found in the sample of defendant's blood, *is held* not erroneous in failing to instruct the jury as to how such testimony should be considered in determining the guilt or innocence of defendant on the charge of driving on a public highway while under the influence of intoxicating liquor, since such testimony relates not to the guilt or innocence of defendant but to the credibility of the testimony of the witness that from his analysis of the blood sample taken from defendant and from his personal observation of defendant, defendant was under the influence of some intoxicating beverage.

**4. Criminal Law § 159—**

Assignments of error not brought forward and discussed in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

APPEAL by defendant from *Stevens, J.,* October 1961 Term of LENOIR. Criminal prosecution for driving an automobile upon a public highway, while under the influence of intoxicating liquor, heard *de novo* on appeal from a conviction in the Municipal-County Court of Lenoir County.

Plea: Not Guilty. Verdict: Guilty.

From a judgment that defendant pay a fine of $150.00 and costs, he appealed.

*Attorney General T. W. Bruton and Assistant Attorney General G. A. Jones, Jr., for the State.*

*White & Aycock, By Thos. J. White and Dan E. Perry for defendant appellant.*

Parker, J. About 9:45 o'clock p.m. on 13 February 1961 R. E. Eubanks, a police officer of the city of Kinston, saw defendant drive his automobile through a red traffic light on North Queen Street in the city at a speed of about 35 miles an hour. Eubanks, who was driving a patrol automobile, turned his automobile and followed defendant. Defendant's automobile was weaving, he jerked the wheel, and almost ran off the road. Thereafter he would go to the center line, and jerk his wheels quick, and come back to the shoulder. Eubanks followed him driving in that manner about three blocks, and stopped him. Eubanks got out of his patrol automobile, and went to defendant's automobile. Defendant lowered his window, and looked at Eubanks. Defendant had a very high odor of alcohol on his breath. Defendant, at Eubank's request, got out of his automobile. He was in a staggering condition. Eubanks found a bottle containing a small amount of whiskey in defendant's automobile. Defendant said he had had two drinks out of the bottle. From Eubanks' observation of, and conversation with, defendant, he formed the opinion defendant was appreciably under the influence of some intoxicating beverage. Eubanks arrested defendant, and carried him to the police station.

E. A. Brooks, a police officer of the city, saw defendant come in the police station with Eubanks. Defendant was in a very staggering condition, his shirt tail was out, and his pants were twisted. He had a strong odor of some alcoholic beverage on his breath. Defendant is crippled with arthritis.

Defendant in the police station, in response to an inquiry by Eubanks, said he wanted a blood test, and signed an application for it. Eubanks carried defendant to a local hospital to have a blood test made by David P. Lutz, who met them there about 9:50 o'clock p. m.

David P. Lutz testified in substance on direct examination: He has been employed at Lenoir Memorial Hospital for almost four years. He is laboratory director, and supervises the analysis of body fluid, which includes the analysis of blood. He has been doing this kind of work for 18 years. Prior to coming to Kinston he was in Public Health in Gastonia, where his work required some analysis, but not pertain-

ing to alcohol. He has been engaged in work in the examination of blood for alcoholic content about nine years. He has had training at the Medical College of Virginia, State College in Raleigh, and Navy School during service. He served in Rowan Memorial Hospital in Salisbury, where at times his work required blood analysis. He has done some studying in the field of analysis of blood for alcoholic content, reading pamphlets, bulletins and books on the subject. He has made hundreds of thousands of blood tests or blood analyses, and estimates he has made between thirteen and fifteen hundred examinations or tests of blood for alcoholic content. At this point the solicitor for the State submitted that Lutz had qualified as an expert in blood analysis. Whereupon, Mr. White, defendant's counsel, at his request was granted permission by the court to ask Lutz some qustions. This is the substance of his testimony in reply to Mr. White's questions: His work is principally that of a laboratory technician for purposes other than alcoholic tests. He runs tests of very many samples of blood for many reasons. The analyses he makes of blood samples for alcoholic purposes represent a small part of his work. He had short courses in medical fields at the Medical College of Virginia; he is not a graduate of that College. He has had three or four short courses the past number of years. By short courses he means one or two weeks. He has been to State College several times for a week or two weeks course. He followed his line of work while he was in the navy during the war. That's the principal training he has had in this work, together with working under pathologists and senior technicians.

At this point in Lutz's testimony Mr. White said: "We will admit that the witness is an expert medical laboratory technician."

The court then held "that the witness is an expert in the field of analysis of body fluids, which includes blood and alcoholic concentration in the blood stream." To this holding defendant did not except.

After this holding by the court, Lutz testified on direct examination, without any objection or exception, in substance: The making of tests for alcoholic content in the blood stream is no more complicated than analyzing blood for any other purpose. He makes analyses for sugar, iron, mineral elements, potassium. The procedures are a little different. He saw defendant, in company with Eubanks, in Lenoir Memorial Hospital on the night of 13 February 1961. He took some blood from the body of the defendant. He later made an analysis of this blood of defendant with respect to alcoholic content, and the result of his test showed point twenty-two (.22) plus. The instrument he has to measure doesn't measure any higher than point twenty-two (.22).

Defendant's first assignment of error is that the court erred in overruling his objections to questions propounded to Lutz by the solicitor

for the State, and to the court's refusal to strike out the answers of the witness to these questions, all of which are the basis of his exceptions numbers one through thirty-two, both inclusive. This is a summary of the challenged testimony: A person is appreciably under the influence of intoxicating liquor, minimum content, at point fifteen (.15). Point fifteen (.15) is a mean average accepted for all persons, at which point they would be under the influence of intoxicating liquor. It has been determined that some persons with as low as point 0-five (.05) and point one-0 (.10) would be under the influence. It is established that at point fifteen (.15) any person would be appreciably under the influence, regardless of age, size, or anything else. There are some things that will slow the entrance of alcohol into the blood stream, for instance greasy or starchy food. If a person on a full stomach were to drink a great quantity of alcohol, a smaller percentage of alcohol would seep into the blood stream than with a person with an empty stomach. At point thirty-five (.35) of alcohol in the blood stream, a person becomes unconscious; at point forty-five (.45) to point five-0 (.50) of alcohol in the blood stream it would be fatal.

Immediately after the giving of this challenged testimony, Lutz testified, without objection, that from his observation of defendant on that occasion, aside from any blood test analysis, it was his opinion that defendant was appreciably under the influence of some intoxicating beverage; he detected on him the odor of an alcoholic beverage.

Lutz testified on cross-examination: "I told the solicitor I made other tests and that while many of them were different one is probably not much more difficult than the other to make. In these tests I make for the doctors I do not undertake to say what effect the condition that I conclude to exist has upon the body of the individual unless the doctor asks me. The doctor is ordinarily the judge of that. This alcoholic determining test is not the only one in which I am called upon to say what effect it has on the human body. There are many of them. I measure some by visual aid, some by mechanical means and some by spectrophotometer."

Defendant's first assignment of error, based upon his exceptions one through thirty-two, presents for decision the question whether Lutz is sufficiently qualified as an expert to testify as to the effects of certain percentages of alcohol in the blood stream of human beings.

We have held in *S. v. Willard*, 241 N.C. 259, 84 S.E. 2d 899; *S. v. Moore*, 245 N.C. 158, 95 S.E. 2d 548; *S. v. Henderson*, 245 N.C. 165, 95 S.E. 2d 594; *S. v. Collins*, 247 N.C. 244, 100 S.E. 2d 489; *Osborne v. Ice Co.*, 249 N.C. 387, 106 S.E. 2d 573; that R. B. Davis, Jr., who was a witness in all these cases, was sufficiently qualified as an expert witness to testify as to the effect of certain percentages of alcohol in

the blood stream of human beings. In the *Willard* case, the trial court found as a fact that R. B. Davis, Jr., is an expert chemist and hematologist. In that case Davis testified he had made a study over a period of time as to the effect of alcohol in the blood stream upon a human being, that he had studied medical and clinical texts on the subject, that the texts he has studied concerning the effect of alcohol on the human being are recognized authorities on the subject, and that from his studies and tests and experience he thinks he is qualified to say how and in what manner alcohol affects the human being. Davis is not a doctor of medicine. Davis made an analysis of Willard's blood. In the *Moore* case, the solicitor for the State submitted R. B. Davis, Jr., to the trial court as an expert hematologist and clinical technologist and technician and chemist. In the *Henderson* case, R. B. Davis, Jr., testified in substantial accord with the testimony given by him in the *Moore* case. The Court in a *per curiam* opinion held that the decision in the *Henderson* case was controlled by the decision in the *Moore* case. In the *Collins* case the trial court held that R. B. Davis, Jr., is an expert as a clinical technologist, chemist, toxicologist and hematologist. In the *Ice Company* case R. B. Davis, Jr., was held to be an expert in chemistry, hematology and clinical technology.

Defendant states in his brief: "At first glance these cases [the five cases above] appear to hold directly *contra* to our appeal," but he contends they are not in point, because in each case Davis qualified as a chemist, and Lutz did not qualify as a chemist. Defendant further states in his brief: "At most, Mr. Lutz could qualify only as an expert hematologist. This, we respectfully submit, is not sufficient." In support of his contention defendant relies on *Tarrock v. City of Kingston,* 279 App. Div. 693, 108 N.Y.S. 2d 16, a wrongful death case. This is all that appears in the brief *per curiam* opinion in this case as to the hematologist: "The court properly excluded the testimony of a hematologist as to a 'recognized standard' by which intoxication is presumed to occur from the percentage of alcohol found in blood. He was not a physician *or otherwise shown qualified from personal experience* to be able to give an opinion which a court would accept on this subject, and the court left it open to the appellant to show by competent proof the effect of the alcohol which the hematologist said he found on examining the blood." Emphasis ours. The Court held that this hematologist was not qualified, but it did not hold that a hematologist by specialized study and personal experience could not qualify to testify as to the effects of certain percentages of alcohol in the blood stream of human beings.

Defendant's counsel admitted that David P. Lutz "is an expert medical laboratory technician." The trial court, without any objection

on defendant's part, held as a matter of fact that David P. Lutz "is an expert in the field of analysis of body fluids, which includes blood and alcoholic concentration in the blood stream."

Webster's Third International Dictionary defines hematology as "a branch of biology that deals with the blood and blood-forming organs," and hematologist as "one that specializes in the study of the blood." The judge's finding in effect is, *inter alia,* that Lutz is an expert hematologist.

Webster's Third International Dictionary defines chemistry, "1 c: a science that deals with the composition, structure, and properties of substances and of the transformations that they undergo . . . 2 a: the composition and chemical properties of a substance . . .," and a chemist "b: one trained in or engaged in chemistry." 14 C.J.S., p. 1103 defines chemistry as "the science that treats of the composition of substances and of the transformations which they undergo."

We know of no case that holds that a properly qualified hematologist cannot testify as to the effects of percentages of alcohol in the blood stream of human beings, unless he is also a chemist, and it would seem that no court would make such a decision.

Lutz has been engaged in work in the examination of blood for alcoholic content about nine years. He has made between thirteen and fifteen hundred examinations or tests of blood for alcoholic content. He has read pamphlets, bulletins and books on the subject. He has had short courses in medical fields at the Medical College of Virginia. He has worked under pathologists and senior technicians. He testified on cross-examination: "In these tests I make for the doctors I do not undertake to say what effect the condition that I conclude to exist has upon the body of the individual unless the doctor asks me. The doctor is ordinarily the judge of that. This alcoholic determining test is not the only one in which I am called upon to say what effect it has on the human body. There are many of them."

It would seem from the evidence before us that Lutz has acquired by study and practical experience sufficient specialized knowledge to testify as to the effects of certain percentages of alcohol in the blood stream of human beings. Knowledge acquired by doing is no less valuable than that acquired by study. It may not be amiss to say, the testimony that Lutz gave in the present case as to the effects of certain percentages of alcohol in the blood stream of human beings is in substantial accord with the testimony of R. B. Davis, Jr., on the same subject as it appears in *S. v. Moore, supra.* The trial judge properly admitted this challenged testimony for the consideration of the jury. Defendant's first assignment of error, based upon his exceptions one through thirty-two, both inclusive, is overruled.

Defendant assigns as error that the judge in his charge stated the challenged evidence as to the effect of percentages of alcohol in the blood stream of a human being, all human beings, some human beings, any human beings. This assignment of error is overruled.

Defendant assigns as error that the court failed to perform the duties required of it by G.S. 1-180, in that it failed "to explain the law and instruct the jury as to in what manner and to what extent the state's evidence regarding the alleged alcoholic content in the blood sample taken from the defendant should be considered by the jury in determining the guilt or innocence of the defendant," and further assigns as error the court failed in its charge to explain the law and instruct the jury as to in what manner and to what extent the state's evidence relating to the effect of percentages of alcohol in the blood stream of a human being, all human beings, and some human beings should be considered by the jury in relating the same to the defendant and in determining the guilt or innocence of the defendant. Defendant has not favored us with any citation of law whatsoever from decided cases or textbooks or anywhere else as to any such law as he contends for in these assignments of error. After diligent search we have found no law as contended for by defendant. In *S. v. Willard, supra,* the Court merely said, "the expert testimony as to the results of test of defendant's blood was admissible on the trial of this case on a charge of driving a motor vehicle while upon the public highways within the State while under the influence of intoxicating beverages." In *S. v. Haner,* 231 Iowa 348, 1 N.W. 2d 91, a prosecution for operating a motor vehicle while intoxicated, a physician, who had qualified as an expert on the subject of intoxication and blood tests, was held competent to testify as to what was accepted by physiologists as the minimum alcoholic content of an intoxicated person's blood. The Court said: "The evidence of Dr. Fee was admissible on the question of intoxication and was entitled to be considered by the jury." The *Haner* case makes no statement of any kind as to any such law as contended for by defendant. The challenged testimony of Lutz was competent for the consideration of the jury, and "as to in what manner and to what extent" it should be considered by the jury in relation to the defendant seems to be in the field of argument and contentions as to Lutz's credibility and as to the bearing of his testimony upon the issue of the guilt or innocence of defendant. These assignments of error are overruled.

The other assignments of error to the charge are not brought forward and discussed in the brief, and are deemed abandoned. Rule 28, Rules

of Practice in the Supreme Court, 254 N.C. 783, 810; *S. v. Strickland,* 254 N.C. 658, 119 S.E. 2d 781.

In the trial below we find

No error.