# STATE v. MYRON ROGER ANDERSON.

223 N. W. 2d 789.

November 1, 1974—No. 44408.

*Harry N. Ray,* for appellant.

*R. Scott Davies,* City Attorney, and *A. Keith Hanzel* and *Michael T. DeCourcy,* Assistant City Attorneys, for respondent.

Heard before Kelly, Yetka, and McRae, JJ., and considered and decided by the court en banc.

PER CURIAM.

Defendant, Myron Roger Anderson, appeals from the denial of his post-trial motions by the municipal court of St. Paul after he had been found guilty of operating a motor vehicle while under the influence of an alcoholic beverage and of operating a motor vehicle with .10 percent or more by weight of alcohol in his blood. We affirm.

Defendant was arrested in the city of St. Paul on May 6, 1972, for driving while under the influence of alcohol, and was then taken to the Public Safety Building where a breathalyzer test was administered. Officer Robert Dusek of the St. Paul Police Department testified at the trial that he administered the test in accordance with the "Breathalyzer Operational Check List"

for the machine and that the resultant dial reading showed .24 percent alcohol by weight. Thomas R. Burr, a criminalist and head of the breath-testing program for the St. Paul Police Department, also testified, but immediately encountered the objection that he failed to meet the requirements for interpreting a breathalyzer test as promulgated in State of Minnesota, Dept. of Highways Reg. 2. Over further objection, Burr testified at length on the theory and operation of breathalyzers, and in answer to a hypothetical question stated that a reading of .24 on the breathalyzer machine would indicate that the subject of the test had a blood alcohol content of .24 percent by weight and was under the influence of alcohol.

The issues on this appeal are raised within the framework of Minn. St. 1971, § 169.123, the so-called implied-consent law. Section 169.123, subd. 3, provides in part:

"* * * The person administering such test at the request and direction of such peace officer shall be fully trained in the administration and interpretation of such tests pursuant to standards promulgated by rule by the commissioner of public safety."

To effectuate this mandate, the commissioner of public safety promulgated State of Minnesota, Dept. of Highways Reg. 2.[1]

---

[1] State of Minnesota, Dept. of Highways Reg. 2, provides: "(a) Purpose. The purpose of this regulation is to carry out the mandate of the legislature and to effectuate that mandate as set forth in the Laws of Minnesota 1961, Chapter 454, Section 3, [Minn. St. 1971, § 169.123, subd. 3] with reference to the standards of training for persons administering and interpreting chemical tests for intoxication.

"(b) Scope. The scope of this regulation is intended to be confined within the framework of and consistent with the Laws of Minnesota 1961, Chapter 454, Section 3.

"(c) Definitions. For the purpose of this regulation administering shall mean the taking of a specimen of blood, breath, urine or saliva from a person for analysis to determine the amount of alcohol in the blood of that person. For the purposes of this regulation interpreting shall mean the analyzing and testing of the specimen of blood, breath,

This regulation sets forth in detail the qualifications required in order to interpret tests of blood, breath, saliva, or urine.

1. The first issue raised by defendant is whether the trial court was required to take judicial notice of Reg. 2. This issue is governed by State, Dept. of Highways, v. Halvorson, 288 Minn. 424, 181 N. W. 2d 473 (1970), in which this court held that judicial notice should be taken of Reg. 1 in the same set of regulations. Because the trial court in that case did not have the regulation before it, the holding was qualified by the following language:

"* * * The trial court, therefore, should not be unduly faulted for its failure judicially to notice the text of the regulation. Where a court is asked to take judicial notice of an agency regu-

urine or saliva, and the translating of the results of such tests or analysis into conclusions of the per cent of alcohol in the blood.

"(d) Persons qualified to withdraw blood for chemical tests to determine intoxication. Only physicians, medical technicians or registered nurses licensed by the appropriate official state examining or licensing board may withdraw blood for the purpose of determining the alcoholic content therein.

"(e) Persons qualified to take specimens of breath, saliva or urine. Only physicians, medical technicians or registered nurses who have met the above requirement or peace officers who have satisifed the requirements for training of peace officers set forth in Minn. Reg. Hwy. 1 may take breath, saliva or urine for the purpose of determining the alcoholic content of the blood.

"(f) Persons qualified to interpret tests of blood, breath, saliva or urine. Only persons who have received a bachelors or higher degree in chemistry, biochemistry, pharmacology or criminalistics from an accredited educational institution, may engage in the testing and interpreting of specimens of blood, breath, saliva or urine to determine the alcoholic content of the blood, except that those persons who have qualified as peace officers as defined under Minn. Reg. Hwy. 1, after having taken a special course in the operation of an instrument especially manufactured for analyzing breath to determine the alcohol content of the blood, may after demonstrating their competence to operate such instrument to the satisfaction of the Laboratory Director of the Laboratory of the Minnesota Criminal Apprehension Bureau, administer and interpret chemical tests for intoxication employing breath."

lation, the identity and contents of which are not disclosed in formal pleadings, counsel should be prepared to exhibit to the court the relevant contents of the regulation, either by tendering a copy of the published regulation or by reference to some other readily available official report disclosing its contents." 288 Minn. 429, 181 N. W. 2d 476.

In the instant case, immediately prior to adjournment at the end of the first day of trial, the court requested that counsel for defendant bring a copy of Reg. 2 with him to court the following morning. Apparently this was done, since counsel read from the regulation in questioning a witness the next day. The record does not reveal any specific ruling by the trial court on judicial notice of the regulation, but since the court had the regulation available to it, was required to take judicial notice of it, and the state made no objection to such notice, it can be presumed that it was so noticed by the trial court in making further rulings with regard to competency of witnesses, even though those rulings may not have been consistent with defendant's particular interpretation of Reg. 2.

2. The state does not quarrel with judicial notice of the regulation but contends that the regulation is inapplicable to the facts because it applies only to withdrawal of blood samples. This conclusion is based on the contention that the last sentence of Minn. St. 1971, § 169.123, subd. 3, (quoted above) which mandates the regulation applies only to drawing blood. A reading of § 169.123 in its entirety, however, reveals that the words "such test" used in that sentence are used throughout the statute, and, in each instance, logically relate to chemical tests to determine the blood alcohol content. We hold that Reg. 2 applies to breath tests as well as the taking of blood samples, and is applicable to the facts of this case.

3. The determinative issue on this appeal is whether the results of the breath test administered to defendant were interpreted for the jury by a witness who met the requirements of Reg. 2. Defendant contends that Reg. 2 requires that a person

qualifying to interpret the test must have the educational degree specified therein; since Thomas Burr does not have that degree, he was not competent to testify and the results of the breath test were improperly admitted. The state contends that § 169.123, subd. 3, requires only that the person who administers the test need qualify under Reg. 2; since Officer Dusek meets the qualifications of Reg. 2, paragraph (e), evidence of the breathalyzer reading was properly admitted through him, without antecedent expert testimony that the reading is a trustworthy index of alcohol in the blood. State, City of St. Louis Park, v. Quinn, 289 Minn. 184, 182 N. W. 2d 843 (1971).

It appears that neither party has given proper attention to the second half of Reg. 2, paragraph (f). This provision qualifies peace officers both to administer *and to interpret* breath tests if they have taken a course in the operation of a breathalyzer and have demonstrated their competence to the Minnesota Criminal Apprehension Bureau. The laboratory director of that bureau testified that Officer Dusek had attended a school on the operation of breathalyzers and was certified by the bureau both to operate the machine and to interpret the results. Officer Dusek was therefore competent to testify with regard to the test administered to defendant, and the interpretation of the test results was properly admitted through Dusek regardless of the competence of Thomas Burr to testify on the same subject matter.

4. The testimony of Burr was sought to be excluded by defendant on the basis that he failed to qualify under Reg. 2, paragraph (f), which requires a bachelor's degree in chemistry, biochemistry, pharmacology, or criminalistics for those who are not peace officers. Burr did not qualify because his degree is based on a major in biology and only a minor in chemistry. Despite this technical disqualification, Burr instructs in the operation of breathalyzers and is the head of the breath-testing program for the St. Paul Police Department. The record is replete with his educational and practical qualifications to testify as an expert witness on the subject of breath testing, and it is apparent

from the record that it was in this capacity of an expert, rather than of an "interpreter" as defined by Reg. 2, that he was allowed to testify. The trial court, in ruling on defendant's objection, stated:

"Well, we are talking about the meaning of the word 'interpret'. I am holding that the criminalist Thomas Burr was qualified to testify as to what he did testify to—to the extent that interpret means explain to a jury the background of a test or otherwise. He was well-qualified. The only reason he was necessary is because—if he was necessary at all—was because he could answer the questions which the defendant propounded as to the machine itself, its operations and the like. Now, with respect to Officer Dusek, Officer Dusek was a qualified operator. He was qualified to interpret the reading of the chart sufficiently to make the charge of .10, and he did. But he is not, by his own admission, capable of explaining to a jury the background or underlying data. He simply carried out a procedure set and recorded the steps that he took. I think under those unique circumstances, the testimony of Mr. Burr was helpful to the jury."

We agree with the trial court, and hold that the qualifications of Burr, while outside the technical requirements of Reg. 2, paragraph (f), were nevertheless sufficient to lay the foundation for his testimony as an expert witness regarding the theory of breath testing.

Affirmed.