**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Bruce HARTMAN, Defendant and Appellant.**

**No. 11902.**

Supreme Court of South Dakota.

July 7, 1977.

John P. Guhin, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

T. R. Pardy of Mumford, Protsch, Sage & Pardy, Howard, for defendant and appellant.

ZASTROW, Justice.

The defendant, Bruce Hartman, appeals from his conviction of second degree manslaughter under SDCL 22–16–21 (hereinafter referred to as "DWI manslaughter") for the death of Beverly Schulte in a traffic accident.

On September 11, 1975, the decedent was a passenger in an automobile owned and operated by the defendant. The one-car accident occurred on Highway 37 as the defendant drove north from Mitchell, South Dakota, and crossed a bridge near the Lake Mitchell spillway. The defendant testified that as he crossed the bridge his speed was

45 miles per hour, the posted speed limit. Just beyond the bridge, a curved concrete median separates the traffic lanes. The defendant's car struck the median curb, skidding along the curb over 140 feet when the left wheels apparently jumped the curb and onto the median for another 140 feet. The car then returned to and across the traffic lane, leaving skid marks for a distance of over 200 feet until it left the highway, and was airborne for a distance of more than 30 feet. The car slid sideways into the ditch some 126 feet, then traveling another 60 feet before hitting a board fence along the highway right-of-way. After striking the fence, the car then spun and continued backwards some 70 feet until it struck a large wooden utility pole.

Officer Reinesch of the Mitchell Police Department was advised of the accident at 12:53 a. m. When he arrived at the accident scene, he found Beverly Schulte and Marjean Strand, a second passenger in the defendant's car, lying on the ground some 70 feet from the defendant's car. Both girls were quickly removed by ambulance to the hospital.

Officer Reinesch took the defendant to the police station. Based upon his observations of the defendant, Officer Reinesch placed him under arrest for driving while under the influence of an alcoholic beverage (SDCL 32–23–1, hereinafter referred to as DWI). The arrest occurred at the police station at 1:15 a. m. He advised defendant of his constitutional rights and inquired whether the defendant would consent to a blood test. The defendant agreed to do so. The defendant and Officer Reinesch proceeded to the hospital where a blood sample was taken at 2:05 a. m. by a nurse at the direction of Officer Reinesch. The blood sample was mailed shortly thereafter to the State Chemical Laboratory in Vermillion, South Dakota. (The chemical analysis conducted at the state laboratory revealed a blood alcohol level of .12%.)

Although the record is unclear, it appears that the defendant was returned to the police station. At that time, Officer Reinesch was advised that Beverly Schulte had died as a result of her injuries received in the accident. He advised defendant that he was being further arrested for second degree manslaughter.

Prior to the trial, the defendant moved to suppress the blood sample and the test results and any evidence relating thereto. At the trial, these objections were again presented to the court. Although several grounds for the inadmissibility were presented to the trial court, the defendant argues only one on appeal. Defendant contends that the failure of Officer Reinesch to advise the defendant of his right to refuse to give a blood sample under SDCL 32–23–10,[1] 32–23–11,[2] and 32–23–12[3] (hereinafter

1. SDCL 32–23–10 provides: "Any person who operates any vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, urine, breath or other bodily substance *for the purpose of determining the amount of alcohol in his blood, as provided in § 32–23–7*, provided that such test is administered at the *direction of a law enforcement officer having lawfully arrested such person* for a violation of § 32–23–1.

"Such person shall be requested by said officer to submit to such analysis and shall be advised by said officer of his right to refuse to submit to such analysis and the provisions of §§ 32–23–11 and 32–23–12 in the event of such refusal with respect to the revocation of such person's driving license." (emphasis supplied)

2. SDCL 32–23–11 provides: "If any person described in § 32–23–10, after request and explanation as therein provided, shall refuse to submit to such chemical analysis, then such test shall not be given. In such event after opportunity for hearing pursuant to chapter 1–26 if hearing is demanded, if the department shall find that the law enforcement officer complied therewith and the refusal was made by that person then it may revoke for one year his license to drive and any nonresident operating privileges he may have in his possession or may allow such driver to drive under restrictions which may be imposed by the department."

3. SDCL 32–23–12 provides: "Any person whose license has been canceled, suspended, or revoked by the department of public safety under the provisions of § 32–23–11 shall have the right to file a petition within thirty days thereafter for a hearing in the matter in the circuit court for the county wherein such person was charged with the violation, and such court is hereby vested with jurisdiction and it shall be its duty to set the matter for trial de

referred to as "implied consent statutes")[4] renders the sample and results of such test inadmissible.

The defendant relies exclusively upon this court's decision in *State v. Buckingham,* 1976, S.D., 240 N.W.2d 84, which held that breath and blood test results were inadmissible in a DWI prosecution where it is shown that the arresting officer has failed to comply with the implied consent statutes. The defendant contends that because SDCL 32–23–10 refers to SDCL 32–23–7 [5] which in turn refers to the DWI-manslaughter statute (SDCL 22–16–21),[6] noncompliance with the implied consent statutes renders the blood sample and test results inadmissible in this prosecution for DWI-manslaughter.

The *Buckingham* decision was without the benefit of argument from the state on the question of whether use of the "exclusionary rule" was necessary where there is a violation of the implied consent statutes. Upon further consideration, this court feels that it is necessary to modify the *Buckingham* decision which approved the application of the exclusionary rule to bodily substance samples and test results taken in violation of the implied consent laws.

Our consideration of the implied consent statutes must be prefaced upon the United States Supreme Court's decision in *Schmerber v. California,* 1966, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. *Schmerber* held that bodily substance samples were not subject to the exclusionary rule under the Fourth Amendment if they are taken (1) incident to a lawful arrest,[7] (2) by a reliable and accepted method of obtaining such sample,[8] (3) in a reasonable, medically approved manner,[9] and (4) where there is probable cause to believe that the evidence sought exists. It also held that the elimination of alcohol by natural bodily functions presents exigent circumstances which obviate the necessity of obtaining a search warrant.

█ The exclusionary rule is a judicially created means of protecting the rights of the citizens under the Fourth Amendment [10] and Art. VI, § 11 of the South Dakota

---

novo upon ten days' written notice to the department, and thereupon to take testimony and examine into the facts of the case and to determine whether the petitioner's license is subject to cancellation, suspension, or revocation under the provisions of § 32–23–11."

4. SDCL 32–23–13 to 32–23–17, though part of the implied consent law, are not applicable to the question involved in this situation.

5. SDCL 32–23–7 provides: "In any criminal prosecution for a violation of § 32–23–1 relating to driving a vehicle while under the influence of intoxicating liquor, or a violation of § 22–16–21, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance shall give rise to the following presumptions: (1) If there was at that time five hundredths per cent or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor; (2) If there was at that time in excess of five hundredths per cent but less than ten hundredths per cent by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant; (3) If there

was at that time ten hundredths per cent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor.

"Per cent by weight of alcohol in the blood shall be based upon grams of alcohol per one hundred cubic centimeters of blood."

6. SDCL 22–16–21 provides: "Any person who, being under the influence of intoxicating liquor or narcotic drugs or a combination thereof without design to effect death, operates or drives a motor vehicle of any kind in a negligent manner and thereby causes a human being to be killed, is guilty of manslaughter in the second degree."

7. *People v. Superior Court of Kern County,* 1972, 6 Cal.3d 757, 100 Cal.Rptr. 281, 493 P.2d 1145.

8. *Rochin v. California,* 1952, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396; *Breithaupt v. Abram,* 1957, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448.

9. *Rochin v. California,* supra.

10. *Weeks v. United States,* 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; as applied to the states by *Mapp v. Ohio,* 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

Constitution[11] as a deterrent to unlawful police conduct. However, evidence obtained in violation of statutory rights is not inadmissible per se unless the statutory rights are of constitutional proportions or there exists no other method of deterring future violations of the rights which the legislature has granted to its citizens. *People v. Brannon*, 1973, 32 Cal.App.3d 971, 108 Cal.Rptr. 620; *State v. Valdez*, 1977, 277 Or. 621, 561 P.2d 1006.

A review of our implied consent statutes reveals the intent of the legislature to extend to the operators of motor vehicles a right beyond those embodied within the Fourth Amendment or Art. VI, § 11, South Dakota Constitution, i. e., the right to refuse to submit to a chemical test of their bodily substances for a determination of blood alcohol content. In return for that statutory right, the state is provided with several benefits in its efforts to identify, prosecute and remove intoxicated drivers from our highways. (1) Any person operating a motor vehicle is deemed to have impliedly consented to a withdrawal of bodily substances for a chemical test. (2) In DWI and DWI-manslaughter prosecutions, test results of samples withdrawn in compliance with the implied consent law give rise to certain presumptions of intoxication based upon the blood alcohol content. (3) If the operator withdraws his implied consent, his driving privileges may be revoked or suspended for a period up to one year.

Our implied consent law does not provide that the bodily substance sample or test results are inadmissible at a subsequent prosecution where the sample is obtained without compliance with the implied consent statutes, as some states have done. See *People v. Todd*, 1975, 59 Ill.2d 534, 322 N.E.2d 447. However, it appears that the implied consent statutes within themselves provide a sufficient deterrent to violation of the implied consent statutes by police officers without excluding this highly probative evidence.[12]

 If there is not substantial compliance with the implied consent statutes, the department of public safety cannot revoke or suspend the operator's driving privileges for refusing to submit to such tests. Furthermore, noncompliance with the implied consent statutes, although not making the test sample and test results inadmissible, results in a forfeiture of the statutory presumptions of SDCL 32-23-7. Therefore, the physiological effects of the blood alcohol content upon the defendant must be proven by the testimony of a properly qualified expert,[13] not by statutory presumptions. As expressed in *State v. Spry*, 1973, 87 S.D. 318, 207 N.W.2d 504, the jury should only be instructed concerning the presumption of intoxication where properly administered test results are available. Proper ad-

11. *State v. Kietzke*, 1971, 85 S.D. 502, 186 N.W.2d 551; *State v. Opperman*, 1976, S.D., 247 N.W.2d 673.

12. A prosecution under SDCL 32-23-1(1) which makes it a misdemeanor to drive with "0.10 per cent or more by weight of alcohol in his blood" would not be subject to the same deterrent effect, and the exclusionary rule may be needed in prosecutions for violations of subsection (1) if the implied consent statutes have not been complied with.

13. *Jones v. State*, 1952, 159 Tex.Cr.R. 29, 261 S.W.2d 161 (professor of pathological chemistry); *Ritchie v. State*, 1956, 164 Tex.Cr.R. 38, 296 S.W.2d 551 (chemist and pathologist); *State v. Moore*, 1956, 245 N.C. 158, 95 S.E.2d 548 (hematologist); *Cloud v. Market St. Ry. Co.*, 1946, 74 Cal.App.2d 92, 168 P.2d 191 (toxicologist); *People v. Bobczyk*, 1951, 343 Ill.App. 504, 99 N.E.2d 567 (professor of biochemistry and toxicology); *O'Loughlin v. Detroit and Mackinac Railway Co.*, 22 Mich.App. 146, 177 N.W.2d 430 (toxicologist-chemist); *State v. Hart*, 256 N.C. 645, 124 S.E.2d 816 (hematologist); *McCray v. State*, Tex.Cr.App., 365 S.W.2d 9 (chemist-toxicologist); *Fletcher v. State*, Tex.Cr.App., 382 S.W.2d 931 (graduate chemist with special training in alcohol effect on human body); *State v. Bessette*, 130 Vt. 438, 296 A.2d 179 (chemist specializing in alcohol's effect on human body); *Rigby v. Eastman*, 1974, Iowa, 217 N.W.2d 604 (doctorate in bacteriology and biochemistry with extensive testing of physiological effects of alcohol); *State v. Bailey*, 54 Wis.2d 679, 196 N.W.2d 664 (chemist qualified as to results but not physiological effect); *People v. Morgan*, Co.Ct., 236 N.Y.S.2d 1014 (police detective not qualified); *State v. Anderson*, 1974, 302 Minn. 77, 223 N.W.2d 789 (criminalist qualified as to results but not physiological effect).

ministration requires substantial compliance with the implied consent statutes. In this case, there was no compliance with the implied consent statutes; however, all of the Fourth Amendment requirements of *Schmerber* were met, i. e., a lawful arrest, probable cause, a reliable method, and a reasonable, medically accepted removal of defendant's blood. The blood sample and the test results were therefore admissible but not the subject of the statutory presumptions of physiological effects of blood alcohol content.

Here, the defendant not only did not object to the court's instruction as to the statutory presumptions but conceded that if the blood sample and the test results were admissible, the instruction had to be given. The failure of the defendant to object to such instruction waived any error in its submission. SDCL 15–6–51(b); SDCL 23–42–6(5); *State v. Barr*, 1975, S.D., 232 N.W.2d 257.

The defendant argues that the evidence was insufficient and that the trial court erred in not granting his motions for dismissal, for directed verdict, or for a new trial.

"In determining the sufficiency of the evidence on appeal the only question presented to this court is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilty beyond a reasonable doubt." *State v. Shank*, 1975, S.D., 226 N.W.2d 384.

The evidence was sufficient to sustain the verdict. The evidence shows that the defendant drove his car against the concrete median divider and it then skidded and slid a distance of over 750 feet before coming to rest against a utility pole with sufficient force to cause considerable damage to the rear of the car. The investigating officer who arrested the defendant for DWI stated that the defendant had bloodshot eyes and smelled of alcohol. The blood test indicated that his blood alcohol content was .12%.

The manner in which the accident occurred, the observation of the defendant by the arresting officer, the testimony of alcohol consumption, and the defendant's blood alcohol content are more than sufficient evidence to support the second degree manslaughter conviction of the defendant beyond a reasonable doubt.[14]

The trial court instructed the jury:

"It is the duty of any person operating a motor vehicle upon a public highway of this state to keep such lookout for other vehicles, persons and the conditions upon the highway as a reasonably prudent person would maintain under the same or similar circumstances, and to have the motor vehicle driven by him under such control that he can stop the same, or otherwise avoid an accident, within his range of vision, unless by reason of a condition or circumstances which could not have been reasonably anticipated by an ordinarily prudent person in like position, he could not stop or otherwise avoid an accident." Instruction 10.

The defendant maintains that the instruction should not have been given because "[i]t is a civil instruction which has no place here" in a criminal prosecution. SDCL 22–16–21 requires that in addition to "being under the influence of intoxicating liquor" the defendant "operates or drives a motor vehicle of any kind in a negligent manner." In a DWI-manslaughter trial, it is not error for the court to instruct the jury of the substance of a statutory "rule of the road" if it is applicable to the facts of the case as developed by the evidence. *Turner v. State*, 1938, 183 Miss. 658, 183 So. 522; *State v. Ward*, 1957, 105 Ohio App. 1, 150 N.E.2d 465; *State v. Meany*, 1962, 262 Minn. 491, 115 N.W.2d 247; 61A C.J.S. Motor Vehicles § 668.

The defendant further asserts that the instruction was improper "because there is no evidence of any kind, as to whether a proper lookout was kept or not."

---

14. The testimony of the surviving female passenger in the defendant's car was "Q Marjean, could you tell the jury, in your own words what you remember on the evening of the accident? "A Well, Bruce didn't seem to be *excessively drunk* * * *." (emphasis supplied)

Contrary to the defendant's assertion, there was ample evidence to question whether or not he negligently failed to keep a proper lookout. The testimony shows that his left wheels struck the median curb and presented sufficient evidence for the court to instruct the jury of the defendant's duty to maintain a proper lookout while operating his motor vehicle.

State's Exhibit 5, purporting to be a diagram of the accident scene, was admitted into evidence over defendant's objection that it lacked proper foundation. The defendant now maintains that the foundation was never established and that the introduction of the exhibit was reversible error. The exhibit, although testified to as accurately depicting the scene of the accident by two investigating officers, Officers Reinesch and Royston, was not drafted by them and was only testified to as accurately depicting the accident scene at 8 a. m., eight hours after the accident, not as a scale drawing of the scene.

 This exhibit was only for the purposes of *illustration* ; therefore, it is unnecessary to have its drafter present. *State v. Thibodeau*, 1975, S.D., 233 N.W.2d 326; see also *State v. Aarhus*, 1964, 80 S.D. 569, 128 N.W.2d 881. An exhibit introduced for the purposes of illustration is admissible if it clearly depicts the factual situations and will allow the trier of facts to more clearly understand a witness's descriptions. McCormick on Evidence, § 213 (E. Cleary Ed., 2d Ed. 1972). Officer Reinesch testified that all of the measurements which appeared on the drawing had been made by himself and Officer Royston. The defendant's only objection would be that the undesignated features, such as the road width, curb length, ditch width and fence and pole locations, were apparently drawn to scale.

"It follows from the principle upon which a diagrammatic representation may be employed to illustrate or express the testimony of a witness, that it may be so employed though not made by the witness, or by any other witness in court, or indeed by any known person, *provided it is verified to the satisfaction of the trial judge* as a correct portrayal of the facts, by a witness having the necessary knowledge to do so. Questions of accuracy, of the possible bias or lack of knowledge of the person who made the plat or drawing, *and of the effect of the paper upon the* witness as leading, are open to opposing counsel in cross-examination and argument." 9 A.L.R.2d § 9 at 1060.

The introduction, in any event, is to be determined by the trial court, and its determination will not be overruled except for an abuse of discretion. We find no abuse of discretion in this instance. See generally Annot., Drawings to Illustrate Testimony, 9 A.L.R.2d 1044.

The judgment and conviction are affirmed.

DUNN, C. J., and WOLLMAN, J., concur.

PORTER, J., concurs specially.

MORGAN, J., dissents.

PORTER, Justice (concurring specially).

The blood sample was taken from defendant with his express consent, after he was warned of his constitutional rights. On appeal no contention is made that his consent was given under duress, or through fraud or mistake, nor does defendant claim his consent was secured or the blood sample obtained in violation of any federal or state constitutional right.

Given the above, we need not rely on *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) [where the blood sample was taken over defendant's refusal to consent], nor is consideration of the exclusionary rule [see footnotes 10 and 11, majority opinion] necessary absent a claim the blood sample was unconstitutionally taken from defendant. I do not view the admissibility of the blood sample in this case as in any way dependent upon the implied consent law. I view the blood sample as voluntarily given and thus admissible the same as any other relevant, competent evidence.

On appeal defendant rests his argument for suppression of the blood sample principally upon the failure of the officer to comply with SDCL 32–23–10. If the crime charged here were DWI under SDCL 32–23–1, I would suppress the blood test. That

was the issue this court in *State v. Buckingham*, S.D., 240 N.W.2d 84 (1976) had to resolve in order to decide the case. I would reaffirm the rule of *Buckingham* that the failure of the arresting officer to comply with the requirements of SDCL 32–23–10 rendered the test results there inadmissible. However, SDCL 32–23–10 does not express a legislative intent that a blood sample obtained from a vehicle operator may not be admitted as evidence of some other crime, unless compliance with SDCL 32–23–10 is first established. After the explanation required by SDCL 32–23–10 is given, the vehicle operator is empowered, under SDCL 32–23–11, to refuse the chemical test. If the right of refusal applies where the test is for use in a DWI misdemeanor under SDCL 32–23–1, the imposition of a one-year license revocation for exercise of the right of refusal can reasonably be seen as a sanction not disproportionate to conviction of misdemeanor DWI. If, however, the statutory absolute right of refusal given under SDCL 32–23–11 applies regardless of the crime involved, then a felony DWI manslaughter prosecution [as charged here, under SDCL 22–16–21] may be substantially impeded by an accused in return for the wholly disproportionate penalty of a one-year license revocation. Did the legislature intend that, in addition to the federal and state constitutional protection afforded any person charged with a crime, a vehicle operator should, solely because of that status, also have the absolute statutory right to refuse a blood test, regardless of the crime charged? That intent is not expressed in the statute and I cannot imply such a purpose absent plain language to that effect within the implied consent law.

To construe the absolute statutory right of refusal as applying only to SDCL 32–23–1 DWI does not mean that a vehicle operator whose blood sample is sought by the police may not refuse to consent. It does however, make clear that if the analysis of the blood sample is offered as evidence of a crime other than DWI, there is no requirement that the SDCL 32–23–10 explanation and right of refusal be given before the blood sample is taken. *State v. Buckingham*, upon which defendant relies, has no application here because this defendant had no absolute right under SDCL 32–23–11 to refuse to give a blood sample to be used as evidence in this case, and thus had no statutory right under SDCL 32–23–10 to the explanation of rights there required.

Defendant correctly argues that the DWI manslaughter statute SDCL 22–16–21, under which he was convicted, is now specifically referred to SDCL 32–23–7. There is, however, no reference to SDCL 22–16–21 anywhere else in SDCL 32–23–1 through 32–23–17. If the legislature intended that the rights explanation and statutory right of refusal given by SDCL 32–23–10 and 32–23–11 should also apply to DWI manslaughter, SDCL 22–16–21, the latter section would have been added to SDCL 32–23–10 at the same time the legislature amended SDCL 32–23–7 to include reference to SDCL 22–16–21.

In this case an instruction was given as to the presumption established by SDCL 32–23–7. Whether this instruction may be given in a DWI manslaughter case, absent compliance with SDCL 32–23–10 is not before us. The point has not been briefed or argued by either side and as the majority notes, there was no objection to the instruction at trial.

I agree with the majority opinion that there was sufficient evidence to take the case to the jury, that there was otherwise sufficient foundation for the blood sample and that Exhibit 5 was properly admitted.

For the reasons stated, I join in the judgment of the court affirming the conviction.

MORGAN, Justice (dissenting).

I dissent for two reasons. First I consider *Buckingham* to be a sound well-reasoned decision. I don't read the majority opinion as modifying it but rather as overruling it, which brings up my second reason, the doctrine of stare decisis. While this doctrine is not a rule of law but rather a judicial policy the courts generally do not lightly overrule a precedent. I find no sound reason for doing so in this instance. I do not consider that a review of the arguments as briefed in the *Buckingham* appeal constitutes a satisfactory reason.