STATE of South Dakota, Petitioner
and Appellant,

v.

Gale A. VANDERGRIFT, Defendant
and Appellee.

No. 18776.

Supreme Court of South Dakota.

Considered on Briefs Dec. 1, 1994.

Decided July 19, 1995.

Mark Barnett, Atty. Gen., Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for petitioner and appellant.

Sean M. O'Brien, Brookings, for defendant and appellee.

SABERS, Justice

Gale Vandergrift was charged with driving under the influence (DUI). She refused a blood alcohol test (BAT) after being advised of the implied consent law. However, a BAT was conducted for medical purposes and released to the State without her consent. The trial court suppressed the results of the BAT after a pre-trial motions hearing and the State petitioned for discretionary appeal. We reverse and remand for further proceedings.

### FACTS

Vandergrift was in an automobile accident in Brookings, S.D. at approximately 4:00 p.m. on January 22, 1994. While attempting to make a left turn, she struck an oncoming vehicle. She was injured and transported to the Brookings Hospital by ambulance. Police officers detected an odor of alcohol on her breath at the hospital. She admitted she drank three or four beers at a local bar earlier that day. An officer placed her under arrest for DUI and read her the implied consent warning. She refused the officer's request to submit to a blood test and no blood sample was taken by the State. However, under the direction of Vandergrift's treating physician, a blood sample was taken for medical purposes. The sample was tested for blood count and blood alcohol content. Later, police learned that a blood sample had been taken and requested that it be preserved.

At the preliminary hearing, the State called the hospital's lab technician to reveal the results of the BAT. Vandergrift made a motion to suppress the results of the BAT. The trial court granted the motion to suppress, stating that "allow[ing] the evidence ... could lead to the evolution of ... an unwritten policy that if somebody refuses a blood test, then the doctor gives a blood test and then the results will get into evidence[.]" The trial court held this would circumvent the intent of the implied consent law and that the State's sole remedy for a driver's refusal of a blood test is revocation of their license.

### 1. Whether the implied consent statutes prohibit the admission of a BAT obtained for medical purposes?

"[B]odily substance samples [are] not subject to the exclusionary rule under the Fourth Amendment if they are taken [under certain prescribed circumstances]." *State v. Hartman,* 256 N.W.2d 131, 134 (S.D. 1977) (citing *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). This is because the "elimination of alcohol by natural bodily functions presents exigent circumstances which obviate the necessity of obtaining a search warrant." *Id.* Notwithstanding the inapplicability of the exclusionary rule to bodily substance samples, the legislature has enacted the implied consent law set forth in SDCL 32–23–10:

Any person who operates any vehicle in this state is considered to have given his consent to the withdrawal of blood or other bodily substance and chemical analysis [thereof] to determine the amount of alcohol in his blood [and any other] substance.

The person shall be requested by the officer to submit to the withdrawal of blood or other bodily substance for chemical analysis ... and shall be advised by the officer that:

(1) *If he refuses to submit to the withdrawal or chemical analysis, no withdrawal or chemical analysis may be required unless he has been arrested for a third, fourth or subsequent violation of § 32–23–1,* ...;

(2) If he refuses to submit to the withdrawal or chemical analysis, his driver's license shall be revoked for one year, unless pursuant to § 32–23–11.1 he pleads guilty to a violation of § 32–23–1 prior to a revocation order being issued[.]

*Id.* (emphasis added). Implied consent statutes such as this are intended to extend to drivers of motor vehicles a "right beyond

those embodied within the Fourth Amendment or Art. VI, § 11 [of the] South Dakota Constitution,·i.e., the right to refuse to submit to a chemical test of their bodily substances for a determination of blood alcohol content." *Hartman,* 256 N.W.2d at 135.

█ The purpose for enacting implied consent statutes is, "to avoid physical confrontations between the police and motor vehicle drivers." *State v. Hitchens,* 294 N.W.2d 686, 688 (Iowa 1980) (citations omitted). Implied consent statutes protect suspects from the physical dangers of forcibly extracting blood samples. *See, id.; see also, e.g., State v. Parker,* 444 N.W.2d 42 (S.D. 1989) (defendant physically restrained for extraction of blood sample and submitted to extraction only after a warning that the needle could break off in his arm). In return for granting drivers the right to refuse chemical testing of their bodily substances, implied consent statutes provide the State "with several benefits in its efforts to identify, prosecute and remove intoxicated drivers from our highways." *Hartman,* 256 N.W.2d at 135. This includes the ability to revoke driving privileges for one year as a sanction against a driver who refuses to take a blood test. *Id.;* SDCL 32–23–10(2). In addition, the State may introduce evidence of the driver's refusal to take the test. SDCL 32–23–10.1.

█ Given the intent and purpose of the implied consent law, we conclude that it does not apply to private blood samples taken by treating physicians or their agents for medical purposes. *See, Com. v. Hipp,* 380 Pa.Super. 345, 551 A.2d 1086 (Pa.Super.Ct.1988) (defendant's refusal to submit to BAT requested by police officer had *no bearing* upon admissibility of results of medical purposes blood test). In such a situation, the blood is not withdrawn contrary to the driver's refusal of a blood test *requested by law enforcement.* Rather, the blood is withdrawn in the driver's medical interest for the benefit of her health. Therefore, the implied consent law neither prohibits nor controls admissibility in this instance.

█ This conclusion is limited to blood samples extracted for legitimate medical purposes rather than investigatory purposes. A contrary conclusion would raise the specter

recognized by the trial court, i.e., law enforcement avoidance of the implied consent law by having a doctor withdraw the blood. Where an investigatory purpose provides the impetus for the withdrawal of blood, the intent and purpose of the implied consent law must be protected and, for that reason, the sanctions for noncompliance with the implied consent law must be imposed. However, even in that regard, we note that the implied consent statute does not require suppression of the BAT in all instances where law enforcement neglects to adequately apprise a defendant of his right of refusal under SDCL 32–23–10. *See, Hartman, supra* (BAT results admissible in DUI manslaughter prosecution despite arresting officer's failure to advise defendant of his right to refuse BAT); *State v. Tucker,* 533 N.W.2d 152, 155–56 (S.D.1995) (BAT results admissible in vehicular homicide prosecution despite arresting officer's advice to defendant that he was required to submit to BAT); *State v. Big Head,* 363 N.W.2d 556 (S.D.1985) (BAT results admissible in vehicular homicide prosecution despite arresting officer's failure to inform defendant of his right to refuse BAT); *but see Parker, supra* (BAT results inadmissible and jury instructions on presumptions from BAT reversible error where arresting officer failed to read implied consent warnings to defendant).

█ In this instance, the record reflects Vandergrift's blood sample was taken under the direction of her treating physician *for medical purposes.* No investigatory impetus or purpose for the withdrawal of blood is indicated. Therefore, the trial court erred in excluding the results of the BAT on the basis of the South Dakota implied consent statutes.

Vandergrift next argues that the BAT results should be excluded because admission would violate the physician-patient privilege under SDCL 19–13–7. The State claims that Vandergrift did not address or raise this issue in the trial court.

Because this is an interlocutory appeal on a question of law, the arguments below were largely contained in briefs submitted to the trial court. Under SDCL 15–6–5(d) and SDCL 15–26A–53, briefs submitted to the

trial court are not part of the supreme court record on appeal. However, Vandergrift did preserve this issue in her motion to suppress the BAT results and at the motion hearing where she specifically raised the issue in the cross examination of her treating physician. Counsel asked if any "type of a release signed by Gale Vandergrift as far as releasing medical records" existed. The physician answered, "no." The physician was also asked if Vandergrift provided any consent to him to release any medical records. He replied, "no."

■ Although preserved, the record indicates that the applicability of the physician-patient privilege was never argued below. In an explanation of its decision to suppress the BAT, the trial court clearly framed the issue as whether the implied consent statutes prohibit the admission of a BAT obtained for medical reasons. There is no indication that the question of the physician-patient privilege was ever considered by the trial court. "Prior to claiming error on appeal, the trial court should have the opportunity to rule on the matter." *State v. Jones*, 521 N.W.2d 662, 670 (S.D.1994) (citation omitted). Since the trial court did not rule on the issue of the physician-patient privilege, the issue is not properly before us at this time. *Id.*

Reversed and remanded for further proceedings.

MILLER, C.J., AMUNDSON and KONENKAMP, JJ., and WUEST, Retired J., concur.

GILBERTSON, J., not having been a member of the court at the time this case was submitted, did not participate.