## T. G. (JOHNNIE) McKAY v. STATE.

No. 24807. October 25, 1950.
Rehearing Denied January 10, 1951.
Appellant's Application to File Second Motion for Rehearing
Denied (Without Written Opinion) January 31, 1951.

*Harry S. Pollard,* Austin, for appellant.

*Perry L. Jones,* County Attorney, Austin, and *George P. Blackburn,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

Appellant was assessed a penalty of $50.00 by a jury on a charge of driving a motor vehicle on the streets of the city of Austin while intoxicated.

That he drove the vehicle on the streets at the time alleged is admitted. Appellant stoutly denied his intoxication, but did admit drinking four bottles of beer in the late afternoon and evening before his arrest. When taken to the city hall by the police he signed a written permission for the officers to test his breath for alcohol by an instrument known as the Harger Drunkometer.

The officers who arrested him and observed him after his arrest gave ample evidence to sustain the jury's verdict independent of the complained of evidence in this case. We may not speculate, however, that they would have done so independent of the breath test—which is the real controversy in

the appeal of the case before this court. It, therefore, becomes important to discuss this issue which, in our view of the entire record, is the only question requiring consideration in this opinion.

Appellant's Bill of Exception No. 4 complains of the evidence of Dr. Beerstecher, a research biochemist at the University of Texas. This evidence is stated in the bill, a part of which reads as follows:

" 'I am familiar with the instrument known as the Harger breath test; I have been studying that between ten and eleven months. I feel that the machine is extremely reliable. It shows how much alcohol is in a person's blood at the time the test was taken. Based on my experience and the test run by the Medical Association, if a man has .270 of alcohol in his body by weight, I would say he was intoxicated. * * *' On cross-examination such witness further testified: 'There is disagreement among scientists as to the accuracy of the (Harger) breath test. A chemical analysis of the blood itself shows what per cent or proportion of alcohol is in that blood sample. The Theory of the (Harger) breath test is that the breath indicates a per cent of saturation in the blood; it is a calculated proportion. This breath test is used in a number of states. From my work with this machine for some ten to eleven months, observing the officers making the tests, and from my knowledge as an expert on alcohol, my opinion is that the (Harger) machine is very reliable. This test is not used in many other states. There again, is a difference of opinion between the states, just as there is a dispute among the scientists about its accuracy.' "

The chief contention made by appellant, based on the foregoing bill, is found in his first proposition on page two of his brief, as follows:

"It was error prejudicial to appellant for the trial court, over timely objections of appellant, to permit the State to introduce evidence of a Harger Drunkometer or alcohometer or alcohol breath-test of appellant and the results purportedly shown thereby, because the State did not prove that such breath-test and its result is generally accepted by scientists as accurately establishing the alcoholic content of a subject's blood to show whether he was under the influence of intoxicating liquor and the extent of his intoxication."

As we interpret this contention there is no attack made on the manner in which the officers operated the machine in making

the test. The objection is to the conclusion reached because Dr. Beerstecher, after qualifying as an expert witness, stated that there was a difference of opinion among scientists as to its accuracy. Neither do we find any controversy raised by the bill which contends that, if the machine be accurate and if the blood content actually contained .270 per cent by weight, the scientific conclusion stated by Dr. Beerstecher as to the intoxicated condition of accused is not supported by other scientists. There would probably be no ground for such contention.

The position that it is incumbent upon the state in the trial of the case to prove that the test is scientifically accepted may not be correct, depending upon the degree to which the fact is established by scientific research. This court may recognize generally accepted scientific conclusions, even though there should be some who disagree with them. In all probability a scientist may be found who will disagree with practically every generally accepted scientific theory. We will take judicial knowledge of the scientific fact that the earth is round. At the same time, we know there are still individuals who claim to be scientists who have other theories, even to the extent of holding that instead of living on the outer surface of a globe we live within a globe, and that there are within it sun, moon, stars and all the heavenly bodies which we observe. We would have no trouble in disagreeing with such theory, but it does not destroy the fact that there are others who have a different view. The opinion of such others by no means bars the evidence of a scientific truth before a jury, nor would it preclude the courts from taking judicial knowledge of the truth of it.

Northwestern University, of Evanston, Illinois, has within the present year, 1950, published a work from which we quote:

"The prosecution need no longer rely solely upon * * * objective symptoms. Scientific methods have been developed for determining the alcoholic concentration in the blood by the chemical analysis of body substances, i.e., blood, urine, breath, salvia, or spinal fluid. Such analyses will determine exactly the extent to which a subject is 'under the influence of intoxicating liquor.' The evidence of the results of such chemical analyses may be used to supplement the evidence obtained from observation of the accused. Medical science, through years of research and experimentation, has established that *it is not the amount of alcohol consumed by a person that affects his driving ability but the amount of alcohol absorbed into his blood,* and thus circulated to the brain, that affects his nerves and, correspondingly, his mental and physical faculties."

We may remark, parenthetically, that this scientific fact explains the reason why some people become intoxicated on less drink than others. Their system absorbs more alcohol from a given quantity of intoxicating liquor. It is the amount which goes into the blood and not the amount which the individual drinks which produces the intoxicated condition.

From this same work we quote further:

"The most commonly used methods of determining a person's blood alcohol concentration is to chemically analyze the blood, urine, or breath. The amount of alcohol in the latter two substances directly parallels the amount of alcohol in the blood and therefore, from the amount of alcohol excreted through the kidneys or lungs, the concentration of alcohol in the circulating blood can be determined accurately and scientifically."

It is further observed that the President's Highway Safety Conference, the American Medical Association's Committee on Street and Highway Accidents, the National Safety Council's Committee for Tests for Intoxication, and other national organizations, have recommended the passage of laws by the states which will recognize the value of chemical analyses of the blood, urine, breath, or other bodily substances, and give rise to the presumption that if the test shows the accused to have .05 per cent or less by weight of alcohol that he is not under the influence of intoxicating liquor; that if he has in excess of that amount but less than .15 per cent, no presumption rests one way or the other; that where a test shows .15 per cent or more by weight of alcohol in his blood it shall be presumed that the defendant was under the influence of intoxicating liquor and that such evidence shall not be construed as limiting the introduction of other competent evidence bearing upon the question of his intoxication.

We are not holding, in the instant case, that the foregoing is established as a scientific fact. The publication is a worthy one, from an authority which must be respected and, in all probability, may win such recognition from the courts of some states. The legislature of Texas may pass such law, if within its constitutional powers, but the courts of Texas have no legislative duties or powers. At the same time, this proposal by such authorities is persuasive in supporting the evidence of Dr. Beerstecher, if that evidence needs to be supported, as to the effect of alcohol in the blood, but has no bearing on the accuracy of the instrument used. The brief and argument attack

the entire evidence, but it is our view that the bill as taken goes only to the accuracy of the instrument.

We return, then, from a discussion of the question as presented by appellant in his brief to that which we believe to be a deciding view of the question here presented. Dr. Beerstecher testified that the instrument in question is accurate and he gave his reasons for it. He admitted that there are others who disagree with its accuracy. The objection to his testimony, therefore, goes to its weight and not to its admissibility. If it were the only evidence in the case it may be doubtful that the jury would have found appellant guilty. We are not called upon to say what our view would be if they had convicted on this evidence alone, because, as herein above stated, there is other evidence amply supporting the jury's verdict. Our conclusion is that this evidence is admissible, as presented to us in this record, for whatever it is worth, and it was not reversible error to overrule appellant's objection to it.

We have discussed only the overshadowing question in this case, but have given consideration to all others and find nothing requiring a reversal.

The judgment of the trial court is affirmed.

HAWKINS, Presiding Judge (Concurring).

In my judgment the only question presented by appellant's bill of exception is that discussed in the last paragraph of the opinion by my Brother Beauchamp, and with the conclusion therein expressed I am in accord, and enter concurrence therewith, but abstain from expressing any opinion regarding the general discussion of the subject, or approval or disapproval of the conclusions stated in the several quotations from various sources.

ON MOTION FOR REHEARING.

GRAVES, Presiding Judge.

Appellant argues and files a motion based upon practically one point, and that is because of the fact that scientists are not generally agreed as to the reliability of the Harger Drunkometer, or breath test, in an attempt to ascertain the amount of alcohol in a person's breath; that such disagreement upon the part of such scientists would preclude the use or introduction of the results of such a breath test. We think such a lack of un-

animity might bear upon the weight to be given to the results of such test, but the same appears to be admissible for what it might have been worth, especially in the light of the signed statement of the appellant as it appears in the record, although objected to strenuously at the trial, as follows:

"Aug. 29, 1949.

"I, T. G. (Johnnie) McKay, after having been duly warned by William W. White, the person to whom this statement is made, that I do not have to take any test at all, do freely and voluntarily request that a test for alcohol be given me, and further state that the result of such test may be used in evidence against me on my trial for the offense concerning which such alcohol test is herein made.

"Johnnie McKay."

We are cited to numerous cases throughout other states of the Union, some of them being based upon a failure of an agreement among scientists as to the reliability of this drunkometer test, and thus declining to accept the same in evidence.

In the cited case of Guenther v. State, 153 Tex. Cr. R. 519, 221 S.W. (2d) 780, such a test was held admissible in the presence of an agreement of the accused to submit to the same, and the results thereof were presented to the jury. In that opinion, however, we refused to further say what the result would have been had a proper objection been made to the introduction of the results of such test, which objection we have in this case.

We are cited to many cases in courts outside of Texas relative to the "lie detector" tests, and the courts thereof seem reluctant to hold that the results are recognized by scientists as of proven value in ascertaining an accused's guilt. At the present time, we are in accord with such holdings, and until such tests can be shown to fairly show the guilt or innocence of an accused, we see no reason for their introduction in evidence. All of said tests at the present time are universally recognized as in but an experimental state.

It is shown that some of the states use this Harger test while others do not; that some scientists refuse its recognition while others accept it as reliable. It was accepted as such by the eminent biologist used in this case, who deemed it to be reliable and whose opinion was that such test correctly determined the amount of alcohol found in the breath. His further

judgment that a certain percentage of alcohol if so found in the breath would indicate intoxication seems not to be seriously' challenged. Of course, this latter finding is the basis of appellant's present objection, and we think that the reluctance of the jurisprudence of some of the states to accept such a conclusion based on that test goes to the weight thereof rather than to its admissibility.

It appears from this record that there is a unanimity among all the witnesses that the scent of intoxicating liquor was on appellant's breath. He admitted that he had been drinking beer, but contended that he only felt a little gayer on account of the beer; all other witnesses testifying to the scent of an intoxicant on his breath. The witness who testified to the result of the meter, who was an expert in biology, merely based his testimony on the effect of the amount found on appellant's breath by the use of the meter, which merely confirms the statements of the officers relative to appellant's condition at the time of his arrest. One line of witnesses smells the breath and another measures it, and both arrive at the same conclusion. Therefore, we see no error in such proceedings.

All matters appearing in the record have been given careful consideration by the entire court and we see no reason in further writing save to say that we think this cause has been properly disposed of.

The motion for rehearing will therefore be overruled.