## WALTER BRYSON JONES V. STATE.

No. 26,072. December 3, 1952.
Rehearing Denied January 28, 1953.
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) March 4, 1953.
Writ of Certiorari Denied by Supreme Court
of United States October 12, 1953.

*Travis Kirk,* Dallas, for appellant.

*Henry Wade,* Criminal District Attorney, and *Charles S. Potts,* Assistant Criminal District Attorney, Dallas, and *George P. Blackburn,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

Appellant was given a sentence of a year and a day in the county jail, by a jury, upon a charge of driving while intoxicated.

The charge followed a former conviction and proof of such former conviction is without dispute.

The contentions of appellant, and the counter-contentions of the prosecution, present quite an involved record. A lengthy brief in behalf of appellant was filed and this was followed with

oral argument. The brief for the state was prepared by the office of the district attorney, and a representative from that office argued the case orally. We are so impressed with the elementary character of these contentions as to feel that a discussion of many of them is unnecessary. This is true of practically all, with the exception of such bills as complain of the ruling of the court in admitting the evidence as to the scientific conclusion of the amount of alcohol in appellant's blood.

B. C. Garrison, of the police department of the city of Dallas, testified that he was trained in the use of an instrument known as the "Intoximeter," with which he took a sample of the breath of appellant soon after his arrest. This was delivered to Dr. Morton F. Mason, a Professor of Pathological Chemistry at the Southwestern Medical School, a branch of the University of Texas; he is also toxicologist for the city of Dallas and Dallas County. Dr. Mason testified that he determined the alcoholic content of the breath in the unit delivered to him by the police department, and that the analysis showed the alcoholic content of the blood was .275 per cent alcohol by weight. He then testified that in his opinion this result showed that the appellant was intoxicated. As a basis for his conclusion he testified, under cross-examination, that the American Medical Association and the National Safety Council adopted standards of sobriety which he, as a scientist, accepts as being correct. He says if the concentration of alcohol in the fluid of the party from whom it is taken is greater than .15 per cent he is considered to be under the influence of alcohol. Contrasted with the case before him, in which it showed .275 per cent, he said: "That means that the individual who took this test was unequivocally under the influence of alcohol at the time that the test was given." All questions asked him were strenuously objected to by appellant and this presents one complaint which we feel that we might helpfully discuss in this opinion.

Appellant, either before or while under arrest, it is immaterial which, signed an agreement that this test might be taken. The state relies upon that agreement as authority for making the breath test and the appellant attacks it on the ground that appellant was not competent, at the time, to enter into such agreement. This presents a question which is capable, under some circumstances, of being an absurdity. If appellant was so intoxicated that he did not know what he was doing, his contention in that regard would be an admission of guilt before the court. Such would be a fact which the accused would have to prove.

On the other hand, it might appear in some cases that the state is relying on an agreement with the party, according to the state's contention, would not be capable of making. The solution to this perplexity rests in the fact that a person under the influence of intoxicating liquor, as defined by the Penal Code, need not be so intoxicated as to be incapable of entering into a valid agreement, and yet be sufficiently intoxicated to come within the statute defining driving on a public highway while intoxicated. This court has not held that the state can or cannot force the accused to give a sample of the breath or the urine against his will. The question is not before us in this case.

It is deemed helpful to overlook some of the failures of both the state and the defendant in raising or supporting the questions which have been raised, and this we do because of the frequent misunderstanding about what the court said in the case of Apodaca v. State, 140 Tex. Cr. Rep. 593, 146 S.W. 2d 381. The Apodaca case has been criticized because of subsequent cases apparently in conflict, particularly Ash v. State, 139 Tex. Cr. R. 420, 141 S.W. 2d 341; Halloway v. State, 146 Tex. Cr. Rep. 359, 175 S.W. 2d 258; and McKay v. State, 155 Tex. Cr. Rep. 410, 235 S.W. 2d 173.

If either the appellant or the attorney representing the state in the trial of this case had been familiar with the McKay case it would appear that the questions that have troubled them so much in the instant case would come to this court with an entirely different record. A reference to the McKay case, reaffirmed by us at this time, will suffice to eliminate much that would otherwise need to be written. The trial court's rulings in the instant case were in accordance with the holding of this court in the McKay case.

The Apodaca case was quite a different one in that the officers forced the accused to do things, physically, which created evidence against him and was tantamount to forcing him to testify. In the other cases and the instant case the prosecution secured from the accused existing facts which constitute evidence against him. The Apodaca opinion enumerates the tests through which the accused was forced to go, such as walking fast, making sudden returns, stretching his arms out and putting his finger on his nose, answering questions, together with having him to void the urine for analysis. In holding this to be reversible error, the very logical opinion overlooked making

any distinction between the last named requirement and those which caused him to perform acts which may be used to support opinions of his condition. The entire evidence was held to be improper. Had there been any point in discussing the difference, in all probability the distinguished Judge Christian, who wrote that opinion, would have followed the reasoning which the court followed in the Ash case, and the others cited. This reasoning could be enlarged upon by discussing fingerprint cases, those in which the accused's shoes are compared to a track made by the party committing a crime, and many other instances in which the mechanics used were merely for the purpose of obtaining proof of existing facts. We have always permitted witnesses to testify that they smelled the breath and it had an odor of alcohol; that they saw him walk and heard him talk, when he did so, and such evidence is considered valuable. The accuracy of such evidence, which of necessity involves the opinions of witnesses, is not comparable to that given by the scientist in this case, provided that scientific conclusion is accepted as true. In the present state of our holdings it is received, as other evidence, before the jury to be passed upon by them as they see fit. Scientific treatises on the subject, particularly a recent publication by Northwestern University, reveal the activities of the investigation made, as enumerated by Dr. Mason, and also several others reaching the same conclusion. Based upon that scientific investigation, many of the states have enacted legislation accepting such scientific facts, with the result, as enumerated in the McKay case, that one who has .05 per cent or less by weight of alcohol in the blood is not under the influence of intoxicating liquor; that if he has in excess of that amount but less than .15 per cent no presumption rests one way or the other; that where the test shows .15 per cent or more, by weight of alcohol in his blood, it shall be prima facie proof that the accused was under the influence of intoxicating liquor.

Texas has not passed such a law and this court has not recognized such an established scientific facts, as the legislatures of other states have done. If science has reliably established these standards it would appear to be to the advantage of both the prosecution and defense to have a means of determining the debatable question with an absolutely correct conclusion. Admittedly, to judge the extent of intoxication by smelling the breath may not always be right. The way one talks or walks is admissible but the witness will err in some cases. The amount of alcohol one has taken cannot give positive proof because it

is generally accepted as a matter of common knowledge that some can drink a great deal more without becoming intoxicated than another could. The scientific answer to this is that the one who drinks less to become intoxicated absorbs a greater per cent of the alcohol through his digestive system than the one who can drink more. It is stated in the books of science specifically cited in the McKay case that the amount which one actually absorbs in the blood, not the quantity swallowed, is the determining factor.

The contention that Dr. Mason, or Mr. Garrison, should bring the instrument used into court, that the jury may examine it and determine its accuracy, is untenable. Such seems to be the chief contention. The breath was captured and delivered to Dr. Mason. He qualified himself as a witness to determine its alcoholic content, and any objection to this evidence goes to its weight rather than to its admissibility. The jury heard that objection and they passed upon it, as it was proper for them to do.

Other matters considered present no error and the judgment of the trial court is affirmed.

ON MOTION FOR REHEARING.

MORRISON, Judge.

Appellant's motion for rehearing complains of that portion of our original opinion in which we discuss Dr. Mason's testimony as follows:

"As a basis for his conclusion he testified, under cross-examination,. that the American Medical Association and the National Safety Council adopted standards of sobriety which he, as a scientist, accepts as being correct. He says if the concentration of alcohol in the fluid of the party from whom it is taken is greater than .15 per cent he is considered to be under the influence of alcohol."

This, he says, is comparable to the use of medical textbooks as evidence, and he quotes many authorities, including our own Texas Supreme Court, as condemning the same. Bowles et al v. Bourbon et al, 219 S. W. 2d 779.

We do not so view the testimony. In 20 Am. Juris., Sec. 797, p. .669, we find the following:

"Experts, in giving opinion testimony may, however, **refer** to scientific authorities and state the result thereof. Such **reference** is not deemed an introduction of the books in evidence but as a corroboration of their own opinions."

This, we think, disposes of appellant's contentin.

Not as authority for this holding, but for the information of the legislature, we quote from the Journal of the American Medical Association, Vol. 129, No. 9, on page 631, the following:

"Since 1937 the committee created by the House (House of Delegates of the American Medical Association) to study problems of motor vehicle accident has studied carefully the relation of the action of alcohol to traffic accidents. In this study it has collaborated closely with the Committee on Tests for Intoxication of the National Safety Council. It has on several occasions recommended definite borderline limits for alcoholic influence in terms of amount of alcohol in the suspected drunken driver, and these limits have been approved by the House. In order to promote uniformity in state legislation in this field, the National Safety Council, through its Committee on Tests for Intoxication and with the active collaboration of the Bureau, has formulated a draft of a uniform bill which embodies the borderline limits approved by the House. . . . The draft, in form, is an amendment to section 54, act V, of the Uniform Vehicle Code, and reads (in part) as follows:

"Sec. 54. . . . .

"(b) In any criminal prosecution for a violation of subdivision (a) of this section relating to driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, urine, breath or other bodily substance shall give rise to the following presumptions:

"1. If there was at that time five-hundredths per cent or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor;

"2. If there was at that time in excess of five-hundredths per cent but less than fifteen-hundredths per cent by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered

with other competent evidence in determining the guilt or innocence of the defendant;

"3. If there was at that time fifteen-hundredths per cent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor;

"4. The foregoing provisions of this subdivision shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not the defendant was under the influence of intoxicating liquor."

The legislatures of the states of New York and Wisconsin have in recent years enacted statutes adopting the presumptions set out above.

Remaining convinced that we properly disposed of this case in our original opinion herein, the appellant's motion for rehearing is overruled.