William Harold **TURPIN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 58624.

Court of Criminal Appeals of Texas, En Banc.

Oct. 29, 1980.

Kenneth E. Houp, Jr., Austin, for appellant.

James L. McMurtry, County Atty., John N. Stark, Asst. County Atty., Austin, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for driving while intoxicated. After the jury found appellant guilty, the court assessed punishment at 10 days and a $500.00 fine. The court ordered that the period of con-

finement and $200.00 of the fine be probated.

Sergeant Joe Peters, of the Texas Department of Public Safety (DPS), testified that on May 22, 1976, he observed appellant driving an automobile on Highway 71 near Austin. Peters stopped appellant's car after noticing that the car was weaving. When appellant got out of his car, he had a strong alcohol odor on his breath, was swaying back and forth and leaned against the car for support. Peters testified that during his six years with the DPS, he had observed numerous intoxicated individuals. He stated that in his opinion, appellant was intoxicated at the time he was driving on Highway 71.

Trooper Randy Sullivan, of the DPS, testified that he was a certified operator on the breathalyzer machine. Sullivan administered a breathalyzer test to appellant following his arrest. The result of that test revealed a 0.19% blood alcohol content.

In his first ground of error, appellant contends that the trial court erred in overruling his objection to the court's charge on the presumption of intoxication. See, Art. 6701*l*–5, Sec. 3(a), V.A.C.S. He maintains that the charge was erroneous in that it failed to apply the law to the facts of the offense and failed to inform the jury as to what specific element of the offense the presumption applied.

In its charge the court instructed the jury on the presumption of intoxication in the following manner:

"IV.

"You are further instructed that if it is shown by chemical analysis of a person's blood, breath, urine or other bodily substance, that there was at the time of the act alleged 0.10 per cent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor; however, such amount of alcohol in the blood of the person, if you find there was such amount of alcohol in the blood of the person, merely raises a legal presumption that such person was under the influence of intoxicating liquor, which

presumption may be overcome by competent evidence showing that such person was not under the influence of intoxicating liquor.

"You are further instructed that a person tested may, upon request and within a reasonable time not to exceed two hours after the arrest, have a physician, qualified technician, chemist or registered professional nurse of his own choosing administer a chemical test, or tests, in addition to any administered at the direction of a law enforcement officer. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test, or tests, taken at the direction of the law enforcement officer.

"V.

"You are charged that the facts giving rise to the presumption must be proven beyond a reasonable doubt.

"You are charged that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find.

"You are charged that even though the jury may find the existence of such element, the state must prove beyond a resonable (sic) doubt each of the other elements of the offense charged.

"You are futher (sic) charged that if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose."

In *Slagle v. State*, 570 S.W.2d 916 (Tex. Cr.App.) the defendant contended that the court's charge on the presumption of intoxication was fundamentally defective in that it failed to apply the law to the facts of the case. The charge given in that case was substantially the same as given in the instant case. After noting that there had been no objection at trial, the Court found that the charge given adequately protected the defendant's rights and that he had not been denied a fair and impartial trial. *Sla-*

*gle v. State*, supra at 920. We have further held that a charge on the presumption of intoxication does not shift the burden of proof to the accused, nor, does the charge constitute a comment on the weight of the evidence. See, *Easdon v. State*, 552 S.W.2d 153 (Tex.Cr.App.).

V.T.C.A. Penal Code, Sec. 2.05, provides: "When this code or another penal law establishes a presumption with respect to any fact, it has the following consequences:

"(1) if there is sufficient evidence of the facts that give rise to the presumption, the issue of the existence of the presumed fact must be submitted to the jury, unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact; and

"(2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:

"(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

"(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;

"(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

"(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose."

Such a charge constitutes a statement of the law applicable to the case. *Easdon v. State*, supra at 155. In *Eckman v. State*,

(Tex.Cr.App.), 600 S.W.2d 937, we held that upon timely request, the court is required to charge the jury on the points stated in Sec. 2.05(2)(A–D), supra.

Sec. 2.05(2), supra, requires that the jury be charged in terms of the presumption and the specific element to which it applies. Paragraph IV of the court's charge sets out the presumption provided by Art. 6701*l*–5, Sec. 3(a), supra. The court further instructed the jury that such presumption related to the issue of whether a person was under the influence of intoxicating liquor.[1] Paragraph V of the charge conformed with Sec. 2.05(2)(A–D), supra.

■ The charge on the presumption of intoxication submitted by the court was merely an instruction to the jury in the form of a statement of the law applicable to the case. The specific facts of an offense need not be applied to the general instructions and definitions in the court's charge; provided, that following the instructions and definitions, the court includes a charge which applies the law to the facts of the offense and instructs the jury under what circumstances to convict or acquit.

We find that the court's instruction on the presumption of intoxication complied with the requirements of Sec. 2.05, supra. The court was not required to apply the facts of the offense to the general instructions given to the jury.

We further find that the charge on the presumption sufficiently identified the element of the offense to which the presumption was to apply. Paragraph IV of the charge relates the presumption to the issue of whether the individual was under the influence of intoxicating liquor. An essential element of the offense of driving while intoxicated is that the person must have been intoxicated or under the influence of intoxicating liquor at the time of the act.

---

1. In defining the offense, the court charged the jury as follows:

"You are charged that our Statutes provide that any person who operates or drives an automobile or any other motor vehicle upon any public road or highway in this State, or upon any street or alley within the limits of an incorporated city, town or village, while such person is intoxicated or under the influence of intoxicating liquor, shall be guilty of a misdemeanor."

■ Therefore, we find that the court's charge properly set out the *terms of the* presumption and the specific element to which it was to be applied. No error is shown in the trial court overruling appellant's objection to the charge.

In his fourth and fifth grounds of error, appellant challenges Art. 6701*l*–5, supra. First, he contends that the caption to the statute is insufficient to serve notice of the creation of a statutory presumption. Secondly, he maintains that the statutory presumption of intoxication contained in the statute is invalid in that the presumption is based on numerous other assumptions and presumptions.

■ During oral argument before this Court, appellant conceded that these contentions were advanced and answered adversely to him in *Slagle v. State,* supra. Remaining convinced of the correctness of our holdings in *Slagle,* appellant's fourth and fifth grounds of error are overruled.

In his third ground of error, appellant contends that the trial court erred in denying his first specially requested charge. The charge requested is as follows:

"You are further instructed that if it is shown by competent evidence that there was at the time of the act alleged 0.05 percent or less by weight of alcohol in the person's blood, *it shall be presumed that the person was not under the influence of intoxicating liquor*; however, such amount of alcohol in the blood of the person, if you find there was such amount of alcohol in the blood of the person, merely *raises a legal presumption* that such person was not under the influence of intoxicating liquor, which presumption may be overcome by competent evidence showing that such person was under the influence of intoxicating liquor." (Emphasis added.)

Appellant maintains that there was evidence before the trial court that appellant's blood alcohol concentration could have been below 0.05% and he argues that he was entitled to an affirmative charge on this defensive theory.[2]

Appellant testified that on the day of his arrest he had ingested a beer at 1:30 p. m. and another at 6:00 p. m. He drank a scotch and soda at 7:00 p. m. and another at 8:30 p. m. He was arrested shortly after 10:00 p. m.

William J. Wilson, chief toxicologist and forensic chemist for Bexar County Medical Examiner, testified that if a man weighing 180 pounds ingested a 12 ounce beer at 1:30 p. m. and another at 5:30 p. m. and further drank a scotch and soda containing one and one–half ounces of alcohol at 7:00 p. m. and another scotch and soda at 8:30 p. m., that man's blood alcohol concentration should be 0.01%. Martin Simon, technical supervisor for the Texas Department of Public Safety breath test program, testified that some individuals are intoxicated at blood alcohol concentrations of less than 0.10% but that normally speaking individuals are not intoxicated when their blood alcohol concentration is between 0.0% and 0.05%.

Thus, there is evidence in the record that appellant's blood alcohol concentration could have been 0.01%. The question now before us is whether appellant was entitled to the charge he requested.

■ Turning to the test of the requested charge it is plain that appellant requested an instruction to the effect that if there was competent evidence that, at the time of the act, appellant's blood alcohol was 0.05% or less, the jury *must presume* appellant was not under the influence of intoxicating liquor.[3]

2. Compare Art. 6701*l*–5 which provides in pertinent part that in a prosecution for driving while under the influence of intoxicating liquor, if it be shown by chemical analysis that there was 0.10% or more by weight of alcohol in a *person's blood it shall be presumed that the* person was under the influence of intoxicating liquor.

3. A presumption is a rule which requires or permits the assumption of the existence of one fact from the existence of another fact. 1 R. Ray, Texas Practice, Law of Evidence, Secs. 50 and 53 (3rd Ed. 1980). Most courts use presumptions to designate an assumption which must be drawn by the trier of the facts from a given fact or group of facts. See, *Madrid v. State,* (Tex.Cr.App.), 595 S.W.2d 106.

Appellant cites *McKay v. State*, (Tex.Cr. App.), 235 S.W.2d 173 and *Jones v. State*, 159 Tex.Cr.R. 29, 261 S.W.2d 161 in support of the proposition that an individual whose alcohol concentration is 0.05% or less is presumptively not under the influence of intoxicating liquor.

In *McKay v. State*, supra, we noted that this Court may recognize generally accepted scientific conclusions. We held that the testimony of an expert witness who endorsed a breath testing device was admissible on the issue of whether the validity of the breathalyzer test was scientifically accepted.[4] In so holding we cited a scientific study which endorsed the concept of a legal presumption of sobriety based on blood alcohol level. However, we said that the creation of such a presumption in Texas is a matter for the Legislature and not for the Court of Criminal Appeals.

In *Jones v. State*, supra, we held that the testimony of an expert witness who referred to the standards of sobriety adopted by the American Medical Association and National Safety Council was admissible because, under the facts of that case, reference to those sources did not constitute admission of their contents into evidence. In the opinion on motion for rehearing, this Court quoted from those standards but also stated that such quotes were not intended as authority for the holding. Rather, they were included by way of information for the Legislature. See *Jones v. State*, supra at 164. Furthermore, in *Jones*, this Court expressly affirmed the holding of *McKay* and refused to recognize the existence of a presumption of sobriety based on blood alcohol levels in absence of a statute providing for such.

In *Slagle v. State*, supra, a prosecution for driving while intoxicated, the Court held that the appropriateness of the statutory presumption of intoxication, Art. 6701*l*–5, supra, is a matter for the Legislature. There, the defendant attacked the admissibility of breathalyzer test results on the basis that variables inherent in the testing

process rendered those results unreliable. In disposing of this contention it was stated that the Legislature is presumably aware of the scientific bases which underlie the presumption of intoxication.

■ Since there is no statutory presumption of sobriety in Texas, in order for this Court to require an instruction regarding a presumption of sobriety based on blood alcohol levels we would first be required to find as a fact that persons with a blood alcohol level of 0.05% or less are generally sober within the meaning of Art. 6701*l*–5, supra. Only then could a jury be instructed that, upon evidence that a defendant's blood alcohol level is 0.05% or less, they shall presume that he was not under the influence of intoxicating liquor.

■ In the absence of a statute creating a presumption of sobriety based on blood alcohol concentration, we hold that such a presumption does not exist as a matter of law. *Slagle v. State*, supra; *Jones v. State*, supra; *McKay v. State*, supra. Whether a particular blood alcohol level should carry the weight of a presumption is a matter for the Legislature.

■ In all cases the jury is the exclusive judge of the facts proved and of the weight to be given to the testimony, except where it is provided by law that the proof of any particular fact is to be taken as either conclusive or presumptive proof of the existence of another fact, or where the law directs that a certain degree of weight is to be attached to a certain species of evidence. Art. 38.04, V.A.C.C.P. Thus, where there is sufficient evidence to give rise to the presumption the issue must be submitted to the jury. Sec. 2.05, supra. There being no presumption of sobriety in Texas, statutory or otherwise, it was not error for the trial court to decline to charge the jury regarding such. Furthermore, the requested charge would not constitute law applicable to the case.

---

4. Subsequent to *McKay* the Legislature declared the results of chemical analysis on a person's breath to be admissible. See, Art.

6701*l*–5, Sec. 3(a), enacted by the 61st Legislature (1969).

Having concluded that appellant's requested charge did not comport with the law applicable to the case, we find it unnecessary to deal with appellant's argument that his requested charge should have been submitted on the ground that he was entitled to present his defensive theory to the jury. The jury should not be charged on a defensive legal theory that is contrary to law. We note that the trial court charged the jury on the principles of "presumption of innocence" and "burden of proof beyond a reasonable doubt." The charge as a whole adequately protected appellant's rights. *Wilson v. State* (Tex.Cr.App.), 581 S.W.2d 661, 665. The trial court did not err in refusing to submit appellant's first special requested charge.

In his sixth ground of error, appellant contends that the results of a breathalyzer test were inadmissible as a matter of law. He maintains that there is uncontradicted evidence that his consent to participating in the test was induced by fraud. The trial court instructed the jury that they were not to consider the results of the test unless they found that appellant freely and voluntarily consented to participating in the test. See, Art. 38.23, V.A.C.C.P.

Appellant directs our attention to his testimony at trial concerning his understanding that if he participated in the breathalyzer test, he would also be given the opportunity to obtain a blood test. Appellant testified as follows:

"A. Okay, I was determined to get a blood test before I would take the Breathalyzer test, or in conjunction with it, and after some conversation, in which Sergeant Peters began to get more and more irate, he began to yell louder and louder, and every once in a while, he would stand up half out of his chair; I think intentionally trying to intimidate me, because he would rise up every time just far enough for me to see that great big gun he was carrying. I wasn't just intimidated. I was terrified. I didn't know what the heck these guys were going to do.

"Q. All right, now—

"A. So finally--excuse me.

"Q. What was your understanding when you took the Breathalyzer?

"A. It was my understanding that I would have a blood test.

"Q. Would you have taken the breath test if you had known they were not going to give you a blood test?

"A. No, sir, not in any way whatsoever would I have.

"Q. Are you telling the jury that you did not voluntarily consent to take the blood test–breath test?

"A. No, sir, I didn't. I took it with the idea in mind that I would have a blood test in conjunction with it, or I would never have taken it in any way."

Sergeant Joe Peters, of the Texas Department of Public Safety, testified that he arrested appellant for driving while intoxicated. Peters requested appellant to take a breath test and further informed him that he had the right to have a blood test administered within two hours of his arrest. Peters stated that appellant's response to this information was as follows:

"A. His response was that he would take the breath test, and then later, there was mention that he wanted to take a blood test in addition to the breath test."

Following his arrest, appellant was transported to the Travis County Jail and given a breathalyzer test. Peters then left appellant at the jail. The record reflects that appellant was not able to obtain a blood test within two hours of his arrest. With regard to what effect his advice concerning the blood test may have had upon appellant's decision to take the breath test, Peters testified, without objection:

"Q. Do you think that telling him that he has a right to take a blood test-- have a blood test may have in any way induced him to take that breath test?

"A. No, sir."

It has been held that the Fifth Amendment has no application to evidence which

is nontestimonial in nature; *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (blood test); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (voice); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (handwriting exemplars); *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (fingernail scrapings). Likewise, in *Hearn v. State* (Tex.Cr.App.), 411 S.W.2d 543, it was held that Art. 38.22, V.A.C.C.P., has no application to the consent involved in giving a blood sample.

■ Nevertheless, it has been held that such consent, in order to be effective, must be voluntary. *Dominguez v. State* (Tex.Cr. App.), 459 S.W.2d 628; *Hearn v. State*, supra. Whether such consent is voluntary is a question of fact for the fact finder.

■ We find that appellant's assertion of fraudulently induced consent is controverted by Peters' testimony. We conclude that in view of the conflicting evidence, the issue of the voluntariness of appellant's consent was properly submitted to the jury. It is to be further noted that appellant's inability to obtain a blood test within two hours of his arrest did not render the results of the breath test inadmissible.[5] Appellant's sixth ground of error is overruled.

In his second ground of error, appellant contends that the trial court erred in failing to suppress the results of appellant's breathalyzer test. He maintains that such results should have been suppressed because "evidence potentially favorable to appellant was destroyed by the state."

The record reflects that in a pre–trial hearing, appellant requested that he be supplied with the test ampoules used in administering the breathalyzer test. Appellant's request was denied after the prosecutor informed the court that such ampoules were not available.

Trooper Randy Sullivan, of the Texas Department of Public Safety, testified that he administered the breathalyzer test to appellant. He stated that the ampoules used in the test were not preserved. He further stated that the machine used in the test was incapable of preserving a breath specimen.

Martin Simon testified that he was a technical supervisor for the breath test program employed by the Texas Department of Public Safety. Simon stated that the purpose of the breathalyzer test was to measure the amount of alcohol in the suspect's breath in order to determine the amount of alcohol in the suspect's blood. The machine operates upon photometric principles to determine how much alcohol is in the breath sample.

Simon explained that to properly operate the machine, it must first be at the correct operating temperature. The operator then must make sure that the test ampoule has a sufficient amount of alcohol reactive fluid in it. Simon related that an ampoule is a small sealed glass container which looks like a miniature bowling pin. The operator then breaks the top off of another ampoule containing the same alcohol reactive fluid, through which the breath specimen will be passed. The operator then turns on a light bulb which shines simultaneously through both of the ampoules. Each ampoule is situated next to a blue light filter and a photocell. The photocell is attached to a galvanometer which measures the light reaching the photocell.

Simon stated that if the suspect had alcohol in his breath, it would cause a reaction with the alcohol–sensitive chemicals contained in the test ampoule through which the breath passed. If such a reaction takes place, the photocell will measure a lighter shade of yellow light coming through the ampoule subjected to the breath sample

---

5. Art. 6701*l*–5, Sec. 3(d), provides:

"The person tested may, upon request and within a reasonable time not to exceed two hours after the arrest, have a physician, qualified technician, chemist, or registered professional nurse of his own choosing administer a chemical test, or tests, in addition to any administered at the direction of a law enforcement officer. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test, or tests, taken at the direction of the law enforcement officer."

than the light coming through the ampoule which was not exposed to the breath sample. The imbalance in light shades or color change is then gauged by the galvanometer. The degree of imbalance is in turn translated into a measurement of the alcohol in the suspect's breath and that measurement is translated into a measurement of the alcohol in the suspect's blood.

Simon further testified that in order for the test results to be reliable, it was critical that the chemicals within the ampoules be properly compounded. He stated that the Department would often buy a lot of ampoules consisting of 30,000 units. In order to make sure that the ampoules were reliable, Simon would run simulated tests, specific gravity tests, titration tests and tests upon the spectrophotometer upon randomly selected ampoules from the lot.

On cross–examination, appellant questioned Simon concerning the availability of the ampoules used in the breathalyzer test. The record reflects as follows:

"Q. Now, if I wanted to test the chemical content of the ampoules used in this test, would I be able to?

"A. No, sir.

"Q. Why not?

"A. Because the ampoule that the subject in question was tested on has been destroyed.

"...

"Q. But the ampoules in this case, which you said are critical to the test, were thrown away?

"A. That is correct.

"Q. Was any sample of the breath preserved?

"A. No, sir, there was not.

"Q. All right, would you turn to the article that I just handed you and look at page 30 of the article. Look at the third sentence of that where it says, 'Preservation of Chemicals Used in Analysis.' Read the third sentence. 'It is strongly recommended.'

"A. 'It is strongly recommended that the federal requirements for approvals of an evidential breath test-

er be amended to provide that a portion of the breath specimen, substantially identical with that actually analyzed, be saved, for example, trapped by an absorbant for later confirmatory analysis if such is desirable or necessary.'

"Q. So it can be done, but it is not being done?

"A. I suppose it could be, but it is not being, no.

"Q. And neither are the ampoules being preserved. It that correct?

"A. No, sir, they are not."

Appellant argues that the State should have preserved and produced the ampoules for inspection prior to trial. He contends that the failure to do so was both a violation of Art. 39.14, V.A.C.C.P. and of due process generally. He further maintains that the only appropriate remedy for such a violation was suppression of the breathalyzer test results.

■ Initially, we reject appellant's contention that the trial court erred in overruling the discovery motion he filed pursuant to Art. 39.14, supra. Where there is no showing that the matters sought to be discovered are material, or that the items sought are in the possession of the prosecution, the defendant is not entitled to relief on appeal. *Brem v. State* (Tex.Cr.App.), 571 S.W.2d 314; *Mott v. State* (Tex.Cr. App.), 543 S.W.2d 623. Art. 39.14, supra, specifically refers to named items which are in the possession, custody or control of the State or any of its agencies.

■ It is undisputed that at the time of the hearing on appellant's discovery motion, the ampoules he sought were not in the possession of the State or any of its agencies. Simon stated that the ampoules were discarded following the giving of the breathalyzer test. We find that the trial court did not err in refusing to require the State to produce a nonexistent item.

Appellant next contends that the State's failure to preserve and produce the ampoules violated his constitutional due process rights. He maintains that the ampoules

constituted potentially favorable evidence which was destroyed by the State.

In *Quinones v. State* (Tex.Cr.App.), 592 S.W.2d 933, the defendant complained of the State's failure to disclose a tape recording made during police investigation. The Court found no error in failing to disclose the tape in that it had not been shown to be either material or exculpatory. The Court noted as follows:

"Traditionally, this Court has declined to find reversible errors stemming from discovery if the defendant was not denied access to exculpatory or mitigating evidence which would have affected the outcome of the trial in his favor. See e. g., *Granviel v. State*, 552 S.W.2d 107 (Tex.Cr. App.1976), cert. denied, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977); *Love v. State*, 533 S.W.2d 6 (Tex.Cr.App.1976); *Bell v. State*, 442 S.W.2d 716 (Tex.Cr. App.1969); *Means v. State*, 429 S.W.2d 490 (Tex.Cr.App.1968); see also *Bates v. State*, supra. More recently in *Stone v. State*, 583 S.W.2d 410 (Tex.Cr.App.1979) and *Frank v. State*, 558 S.W.2d 12 (Tex. Cr.App.1977), this Court has expressly chosen to define 'materiality' under Texas law in the due process terms employed by the Supreme Court in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), one of the more recent elaborations on the disclosure requirements of *Brady v. Maryland*, [397 U.S. 742 (1970)], supra.

"'"... unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose ... The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." The Court stated that the test for materiality imposes a higher burden on the defendant than the harmless error standard. In determining materiality, the omission must be "evaluated in the context of the entire record,"

and constitutional error is committed only "if the omitted evidence creates a reasonable doubt that did not otherwise exist." ' "

Numerous courts have held that the ampoules, if preserved, would not be material as to the accused's guilt or innocence. Those courts have found that any evidence gained upon remeasuring or retesting the ampoule would go only to the credibility of the machine's operator and test results.

In *Edwards v. State*, 544 P.2d 60 (Okl.Cr. App.1976) the Court found:

"The ampoules, we note, may indeed provide an accused with an opportunity to impeach the test results as recorded by the breathalyzer, that is, to challenge, on strictly technical grounds, the represented degree of accuracy of any specific breathalyzer device, but such an effort if successful, could only reflect on the credibility or weight to be given the test result and could not, by itself, have conclusively established the innocence of the accused.... A re–examination of the ampoules, if technically feasible, would fall short of producing evidence which could be characterized as material as to the issue of guilt or innocence." 544 P.2d at 64.

Likewise, in *State v. Canaday*, 90 Wash.2d 808, 585 P.2d 1185 (1978) the Court stated:

"We do not believe that the proposed use of the ampoules in this case–to impeach the credibility of the officer who administered the original test–is a means of raising a reasonable doubt which did not otherwise exist within the meaning of the rule set out above.... We conclude that the used breathalyzer test ampoules are not material evidence in a constitutional sense and nondisclosure of the ampoules caused by routine destruction and disposal is not constitutional error.... "[D]estruction of used breathalyzer test ampoules, ... does not interfere with the defendant's ability to determine the facts or raise a defense of nonintoxication. Testimony to be gained from the ampoules is only tangential to the question

of innocence or guilt." 585 P.2d at 1189–1190.

In *State v. Helmer*, 278 N.W.2d 808 (S.D. 1979), the Court found that the discarded ampoules would not have been material at trial in that the only possible use of the used ampoules would be to recheck the volume of their contents. Likewise, in *People v. Stark*, 73 Mich.App. 332, 251 N.W.2d 574 (1977), it was held that preservation of the ampoules goes to the weight as opposed to the admissibility of evidence concerning the breathalyzer test results.

With regard to the alleged exculpatory nature of the evidence, the Court in *Helmer* stated:

". . . obviously appellant was not able to prove that the ampoule was exculpatory evidence and therefore this requirement is not fulfilled. . . . The Federal District Court in *Edwards v. State of Oklahoma*, 429 F.Supp. 668 (W.D.Okl.1976), stated that:

" 'The Hitch [*People v. Hitch*, 12 Cal.3d 641, 527 P.2d 361, 117 Cal.Rptr. 9 (1974)] court found that it sufficed that there was a "reasonable possibility" that they might constitute favorable evidence. This extension of the Brady Doctrine is not justified as a matter of constitutional law. Brady focused upon the harm to the defendant resulting from non–disclosure. Hitch diverts this concern from the reality of prejudice to speculation about contingent benefits to the defendant.' 429 F.Supp. at 671.

"In the instant case, we hold that there is not 'reasonable possibility' that the evidence would be exculpatory. The trial court found as a fact that in the course of testing, the operator had gauged the ampoule and found it to be acceptable for use. Also, the state chemist testified at

the suppression hearing that he had tested twelve random ampoules from the lot which contained the ampoule used in this case and all twelve ampoules contained the proper amount of liquid in proper concentrations. We ... hold that evidence which would go to the credibility of the test results is not 'exculpatory' evidence." *State v. Helmer*, supra at 811–812.

Those courts which have required preservation of the ampoules have emphasized that they found retesting to be feasible, reliable and useful. See, *People v. Hitch*, supra; *Lauderdale v. State*, 548 P.2d 376 (Alaska 1976); *State v. Michener*, 25 Or. App. 523, 550 P.2d 449 (1976). In *Garcia v. Dist. Ct.*, 589 P.2d 924 (Colo.1979), it was held that the State's failure to collect and preserve the ampoules was tantamount to suppression of evidence. It was stated that the ampoules were material because through independent testing, they would enable a defendant to attack the test results and the ensuing presumption of intoxication.

In the instant case, Simon's testimony indicates that it is the Department's practice to discard an ampoule after its use in a breathalyzer test. This Court has imposed a stringent predicate which must be proven before breathalyzer test results are admissible.[6] Likewise, the accused has the right to obtain additional alcohol detection tests within two hours of his arrest. See, Art. 6701*l*–5, Sec. 3(d), supra. Finally, the Department was shown to have a practice of performing quality assurance tests upon randomly selected ampoules.

We agree with those courts which have held that nonpreservation of the ampoules does not constitute a *Brady* violation. The unavailability of the ampoules merely

---

**6.** In *Cody v. State*, 548 S.W.2d 401 (Tex.Cr. App.), we stated:

"This Court has consistently held that the necessary predicate which the State must prove in order to introduce over proper objection the result of the accused's breathalyzer test includes:

"(1) the use of properly compounded chemicals;

"(2) the existence of periodic supervision over the machine and operation by one who understands scientific theory of the machine;

"(3) proof of the result of the test by a witness or witnesses qualified to translate and interpret such result so as to eliminate hearsay."

goes to the weight and the credibility of the breathalyzer test results. We hold that the unavailable ampoules in the instant case were neither material nor exculpatory in the constitutional sense of a *Brady* violation.

No error is shown in the trial court refusing to suppress the results of the breathalyzer test due to the nonpreservation and unavailability of the ampoules. Appellant's second ground of error is overruled.

The judgment is affirmed.

PHILLIPS and CLINTON, JJ., concur in results.