**Philip John VESTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–95–00046–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Feb. 20, 1996.

Decided Feb. 20, 1996.

Rehearing Overruled March 12, 1996.

Ted Reddington, Dallas, for Appellant.

Sue Korioth, Donald G. Davis, Assistant District Attorneys, Dallas, for State.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Philip Vester appeals from his conviction for driving while intoxicated. He was found guilty by a jury and was sentenced to ninety days in jail, probated for two years, and fined $500.

Vester brings three points of error in which he contends that the trial court erred in denying his motion to suppress evidence of a breath test and by refusing to charge the jury on the alleged involuntariness of his consent to take a breath test.

Vester was arrested by a police officer for driving while intoxicated. He was taken to the county jail, was asked to take sobriety tests, and was administered a breath test. All of the proceedings were videotaped.

Vester first contends that the trial court erred by denying his motion to suppress evidence of the breath test. Vester contends that the officer who administered the breath test made misleading and unauthorized statements to Vester about his options and that these unauthorized and misleading statements rendered his consent involuntary.

A suspect's consent to a breath test must be voluntary, and his consent must not be obtained as the result of physical or psychological pressures brought to bear by law enforcement officials. *Erdman v. State*, 861 S.W.2d 890, 893 (Tex.Crim.App.1993). A trial court's ruling concerning the admission or exclusion of evidence may not be disturbed on appeal unless an abuse of discretion is shown. *Erdman*, 861 S.W.2d at 893. A court abuses its discretion if it refuses to suppress evidence that is obtained in violation of state statutory law, and is therefore inadmissible. TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1996).

In *Erdman*, the Court also approved of reasoning in which the Austin Court of Appeals held that "if a driver's consent to a breath test is induced by an officer's misstatement of the consequences flowing from a refusal to take the test, the consent is not

voluntary," *citing State v. Sells,* 798 S.W.2d 865, 867 (Tex.App.—Austin 1990, no pet.). *Erdman,* 861 S.W.2d at 894 n 3. The officer correctly informed Vester about the requirements set out by the law and about rights provided by the law.

Vester testified as follows:

Q. Now, do you recall the specific part that we talked about on the tape where you were told by Mr. Brainard [a police officer] that you had the right to have a doctor come down and give you a test if it was done within two hours of the time of your arrest, do you recall that?

A. Yes, sir.

Q. And you arrested at about 9:40; is that correct?

A. Yes, sir.

. . . .

Q. At some point in time you have access to a telephone; is that right?

A. Yes, it was late. I don't remember exactly what time.

Q. All right. Was it after you were brought back into the tank after the book-in process? That was the first time you were allowed to have a phone; is that correct?

A. I believe it was. There was so many people in there it's hard to remember.

Q. Well, you certainly—did you have access—you certainly didn't have access to a phone from 9:40 until 11:40, that being a two-hour period?

A. No, sir.

. . . .

Q. Who did you call when you had that opportunity?

A. I called my wife.

. . . .

Q. Now, Mr. Vester, were you told at any time by anybody before you blew into that machine that if you were unable to have a doctor or somebody come down to

jail that that didn't matter, they were still going to be able to use their test that they already had? Were you ever told that?

A. No, sir.

. . . .

Q. . . . . Had you been told or had you known that you weren't even going to get to a phone within a two-hour time period starting at the time of your arrest, would you have taken their test?

A. No, sir.

Officer Brainard's testimony did not contradict Vester's testimony as to what was stated to Vester at the time he took the breath test. The officer testified that he informed Vester that he could

upon request and within a reasonable time not to exceed two hours after the arrest have a physician, qualified technician, chemist, or registered professional nurse of his own choosing draw a specimen and have an analysis made of his blood in addition to any specimen taken and analyzed at the direction of the peace officer.[1]

. . . .

Q. After the officer finished reading this [the statutory warning], as you call it a right, and after Mr. Vester asked a question about it, you then informed Mr. Vester about the same thing you're telling us here. And I'm paraphrasing but the language is on there, and if I'm wrong correct me, but you said, Mr. Vester, what that means is if you're not satisfied with these results you'll then have the right to have your own doctor come down within two hours after the arrest. Is that correct?

A. Yes, sir.

The officer testified that he was not required to give the rights as to the second test by an accused's own physician but that his department did that as a courtesy to the accused. The officer also testified that he did not at any time tell Vester that even if he

---

1. This language tracks Article 6701*l*-5, § 3(d) of Vernon's Annotated Civil Statutes. The officer did not add that "[t]he failure or inability to obtain an additional specimen or an analysis by a person shall not preclude the admission of evidence relating to the analysis of the specimen

taken at the direction of the peace officer under this act." Acts 1973, 63rd Leg., ch. 399, § 5, 1973 Tex.Gen.Laws 995, *repealed by* Acts 1995, 74th Leg., ch. 165, § 24(a), 1995 Tex.Gen.Laws 1870 (current version found at Tex.Transp.Code Ann. § 724.019 (Vernon 1996)).

could not get a blood test, the results of the breath test would still be used against him.

Vester's complaint in this case is not a direct challenge to his not being afforded a reasonable opportunity to contact a person to draw his blood but is that he was misled by the officer when he consented to the breath test because he did so on the basis that he would also then be able to get a blood test administered by a person of his choosing. The remedy for the failure to provide a reasonable opportunity for a blood test is set out in TEX.CIV.STAT.ANN. art. 6701*l*–5, § 3(f):

> If for any reason the person's request to have a chemical test is refused by the officer or any other person acting for or on behalf of the state, such fact may be introduced into evidence on the trial of such person.

Acts 1973, 63rd Leg., ch. 399, § 5, 1973 Tex. Gen.Laws 995, *repealed by* Acts 1995, 74th Leg., ch. 165, § 24(a), 1995 Tex.Gen.Laws 1870 (current version found at TEX.TRANSP. CODE ANN. § 724.062 (Vernon 1996)).

Thus, by statute, the only relief for the failure to make a blood test accessible upon request is the right to bring this fact before the fact finder.

No evidence was presented showing that Vester ever requested a blood test. The specific language of the statute read to him requires that he must request a blood test. According to Vester, the first opportunity that he received to make a phone call, he called his wife, not a person to conduct a blood test.

Vester also takes the position on this contention that the officer deprived him of his right to independent testing because they waited forty minutes after his arrest before administering the breath test,[2] did not provide him with a means of communicating with someone who might take the blood sample, and failed to tell him what the results were.

Vester also complained as a part of this contention that he was never advised of the results of the blood test. Article 6701*l*–5, § 3(e)[3] provides that upon request of a person who has given a specimen requested by a peace officer, full information concerning the analytical results of the test or tests of the specimen shall be made available to him or his attorney. There is no evidence in the record that he ever made such a request.

■ The Court of Criminal Appeals' holding in *Turpin v. State* is very close to the present case. 606 S.W.2d 907 (Tex.Crim. App.1980). In the *Turpin* case, the Court of Criminal Appeals held that the trial court properly instructed the jury about the issue of the voluntariness of the appellant's consent for a breath test. In that case, there was conflicting evidence between the defendant and the officer administering the breath test. The testimony, however, in the *Turpin* case suggests that Turpin was insistent upon getting a blood test before he took the breath test. He also testified that the officer became irate, yelled at him, tried to intimidate him physically by rising up out of his chair so that his "great big gun" could be seen. This differs from the present case in which there was no mention of a discussion with the officer about getting a blood test prior to the breath test or any intimidation. The Court in the *Turpin* case characterized Turpin's assertions as fraudulent inducement to get consent for the breath test. Based on the testimony of both the officer and Vester in the present case, no evidence raises fraudulent inducement by merely informing Vester accurately of the statutes. An officer advising an accused of his statutory rights does not undertake the role of counsel to advise the accused of all the ramifications of such rights. While it is true that Vester was not advised that the breath test would still be admissible without regard to his having a blood test, Vester has not shown by the record to have told the officer he wanted a blood test or that he was taking the breath

---

2. The statute has been read so broadly as to allow the admission of the breath test even when the arresting officer waited over two hours after the arrest to even administer the breath test. *Hawkins v. State*, 865 S.W.2d 97, 99 (Tex.App.— Corpus Christi 1993, pet. ref'd).

3. Acts 1973, 63rd Leg., ch. 399, § 5, 1973 Tex. Gen.Laws 995, *repealed by* Acts 1995, 74th Leg., ch. 165, § 24(a), 1995 Tex.Gen.Laws 1870 (current version found at TEX.TRANSP.CODE ANN. § 724.018 (Vernon 1996)).

test in reliance that he would later get a blood test. An officer cannot be expected to know the mental processes of the accused. Vester testified at trial that he would not have taken the breath test had he known that he would not get an opportunity to take the blood test, but there is no evidence that he ever informed the officer of this fact prior to taking the breath test. These circumstances do not present a case of coercion by psychological pressure. If Vester had followed up by requesting a blood test, the statute provides for such a test, but the failure to do so provides only the remedy of introducing evidence of the police's failure to give him the opportunity to get such a test. We find that the breath test was not rendered inadmissible or involuntary in this case. This point of error is overruled.

■ Vester next contends that the trial court erred by failing to charge the jury on the voluntariness of consent to take the breath test. Vester specifically requested that the jury be given a charge based on Article 38.23 of the Code of Criminal Procedure. This article provides that evidence obtained in violation of the provisions of the constitution shall not be admitted into evidence in the trial against the accused. It further provides that where the legal evidence raises an issue, the jury shall be instructed that unless it believes beyond a reasonable doubt that the evidence was voluntarily obtained, it shall disregard any evidence so obtained.

As discussed under the previous point of error, we do not find there was evidence showing that the officer coerced Vester either psychologically or physically to take the breath test. The mere fact that Vester reached a conclusion that he gave the breath test involuntarily without testimony that the officer coerced him into taking the test is not sufficient to raise the issue to require a jury charge. This point of error is overruled.

■ Counsel next contends that the trial court erred by denying his motion to suppress a portion of the evidence contained in the audio portion of the videotape. Counsel objected to the interrogation questions in-volving the officers' request to Vester to recite his ABC's and count, both of which were recorded on the videotape. Counsel objected both on state and federal constitutional grounds, arguing that such evidence was testimonial in nature, that it was given before he was *Mirandized*,[4] and that such a response to questioning is testimonial in nature and should be suppressed because it was obtained in violation of the Fifth Amendment of the United States Constitution.

■ As the Court of Criminal Appeals pointed out in *Turpin v. State,* 606 S.W.2d at 914, the Fifth Amendment and the right against self-incrimination does not apply to nontestimonial type evidence, e.g., *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (fingernail scrapings); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (handwriting exemplar); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (voice); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (blood test). The Court of Criminal Appeals held in *Hearn v. State* that Article 38.22 had no application to the consent involved in giving a blood sample. 411 S.W.2d 543 (Tex. Crim.App.1967).

In *Vickers v. State,* the Fort Worth Court of Appeals found that because a videotaped recitation of the alphabet from "f" to "w" and counting backwards from 90 to 75 showed confusion of the mind, it was testimonial in nature and should be suppressed on the basis of the Fifth Amendment of the United States Constitution. 878 S.W.2d 329 (Tex.App.— Fort Worth 1994, pet. ref'd). The court in *Vickers* purported to be applying the United States Supreme Court's decision of *Pennsylvania v. Muniz,* 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). We believe that this is an incorrect interpretation of the *ratio decidendi* in *Muniz.* A reading of *Muniz* might suggest that the United States Supreme Court is headed in the direction of such a ruling, but the Court specifically states in footnote 17 that, "[w]e therefore need not decide today whether Muniz's counting (or not counting) itself was 'testimo-

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

nial' within the meaning of the privilege." In the same footnote, the Court states that if he counted and slurred his words, the slurring of the words would be a nontestimonial component of his response. The Fifth Amendment principle should not be applied to actions that only show that the mental and physical faculties of the person are impaired. It is difficult, and perhaps impossible, to separate the physical acts from the mental coordination. If a person walks into an automobile or fails to walk a straight line, it may be because of a mental impairment that prevents the mind from properly coordinating the physical functions of the body. This has not been the historical basis for excluding evidence in protection of Fifth Amendment rights.

In *Dawkins v. State,* the Waco Court of Appeals discussed the alphabet test and the verbal count test in the *Muniz* case. 822 S.W.2d 668 (Tex.App.—Waco 1991), *pet. ref'd per curiam,* 825 S.W.2d 709 (Tex.Crim.App. 1992). The Waco court stated:

> Whenever a suspect is asked for a response requiring him to communicate an express or implied assertion of fact or belief, the suspect confronts the "trilemma" of truth, falsity, or silence, and, therefore, the response (whether based on truth or falsity) contains a testimonial component. [citing *Pennsylvania v. Muniz,* 496 U.S. at 596–98, 110 S.Ct. at 2648] When, however, the requested response is nontestimonial, the suspect is not confronted with this trilemma.

*Dawkins,* 822 S.W.2d at 671.

The Waco court concluded that because the requested sobriety test (the alphabet test and the verbal count test) do not require a testimonial response—neither counting nor reciting the alphabet involves an express or implied assertion of fact or belief—the defendant was not confronted with the trilemma of truth, falsity, or silence. Thus, his right to be free from self-incrimination was not violated.

The judgment of the trial court is affirmed.